E. B. Thorp v. The State.

No. 562.   Decided May 4, 1910.

Rehearing granted June 8, 1910.

**1.—Seduction—Offering Marriage in Good Faith.**

Where, upon trial of seduction, it appeared that the prosecutrix after the alleged act of seduction was married to a third party and to whom she was married at the time of the trial, an offer by the defendant to marry prosecutrix after the State had announced ready for trial came too late and was not made in good faith, under article 969, Penal Code.

**2.—Same—Charge of Court—Accomplice Testimony.**

Where, upon appeal from a conviction of seduction, it appeared from the record that under article 723, Code Criminal Procedure, that a charge on accomplice testimony while incorrect was not prejudicial to the appellant, there was no reversible error.   See opinion for form of charge on accomplice testimony.

**3.—Same—Charge of Court—Requested Charges.**

Where, upon trial for seduction, the requested charges were substantially submitted in the court's main charge, there was no error in rejecting same.

**4.—Same—Charge of Court—Limitation.**

Where, upon trial of seduction, the evidence raised the issue of limitation, it was reversible error to refuse to submit a special charge on this issue as requested.

Appeal from the District Court of Knox.   Tried below before the Hon. Jo A. P. Dickson.

Appeal from a conviction of seduction; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jas. A. Stephens* and *D. J. Brookerson,* for appellant.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, Judge.—From a conviction for seduction with a penalty of two years confinement in the penitentiary, appellant has appealed to this court asking a revision of the trial of the case in the court below.   An indictment was returned in the District Court of Knox County at the March term, 1908, charging appellant with seducing one Flora Dykes, an unmarried woman under the age of twenty-five years.   He was brought to trial at the October term, 1909, resulting in his conviction.

The record discloses that at the time of the trial the prosecutrix, Flora Dykes, was married to a Mr. Davis.   The record does not dis-

close when she married said Davis. At the time of the trial, after the State had announced ready for trial, the defendant filed in court a paper sworn to and subscribed by him in which he made an offer —stating same was made in good faith—to marry the prosecutrix, Flora Dykes, and for that reason he asks that this prosecution be dismissed. To the refusal of the court to dismiss under the defendant's plea he reserved a bill of exceptions. We do not find in the record where the issue was submitted to the jury, either in the general charge of the court or in any of the special instructionss requested by defendant that they should acquit the defendant because, since the seduction, the said Flora Dykes had married a man named Davis, and had placed herself in such position as that she could not in law enter into a marriage contract with the defendant. It is insisted in the motion for new trial that the court erred in not dismissing the · cause for the reason stated and the contention is here made that the ` prosecutrix, having married after the act of seduction, placed herself in a position where she could not legally marry the defendant and for that reason the prosecution was barred. Article 967 of White's Penal Code, provides: "If any person, by promise to marry, shall seduce an unmarried female under the age of twenty-five years, and shall have carnal knowledge of such female, he shall be punished by imprisonment in the penitentiary not less than two nor more than five years, or by fine not exceeding five thousand dollors." Article 969 provides: "If the parties marry each other at any time before the conviction of the defendant, or if the defendant in good faith offer to marry the female so seduced, no prosecution shall take place, or, if begun, it shall be dismissed; but the benefits of this article shall not apply to the case of a defendant who was in -fact married at the time of committing the offense." We have not been cited to any authority sustaining appellant's contention that because of the marriage of the prosecutrix defendant was denied the right or privilege of marrying her, but we understand from the language of article 969 that marriage, or offer in good faith to marry, obliterates the offense. The offense was complete and perfect before the offer of marriage, and the law in its tender mercy to preserve the good name of the injured female and to save her from shame and her issue from the degradation of bastardy, has made this provision, not as a protection to the defendant, but as a shield to the good name of the woman. In other words, the law says this to the defendant: You have committed a crime for which you should be punished, but we are willing to obliterate that crime in order that the name and character of the female whom you have injured and outraged may be preserved. In the case of Harvey v. State, 53 S. W. Rep., 102, this court held that the fact that defendant was under 21 years of age and the fact that his mother had refused to allow him to marry the prosecutrix was no defense; and in the case of Merrill v. State, 42 Texas Crim. Rep., 19, it was

held that the prosecutrix having died before the trial of defendant, would be no defense to a prosecution charging him with the seduction of the female who had subsequently died, and this court, speaking through Judge Henderson, said: "It will be seen that the statute with reference to seduction makes the offense complete when carnal knowledge of the female is procured by virtue of a promise to marry, and the subsequent article simply authorizes a dismissal of the case under certain contingencies. These contingencies are the marriage of the parties, or an offer made on the part of the seducer in good faith to marry the prosecutrix. We take it that 'good faith' here means ability to consummate the marriage. The law requires a promise to marry to be made in good faith, and takes no note of appellant's inability to consummate the marriage. As far as the crime is concerned, it is already committed, and appellant can only escape punishment for his crime by complying with the statute that authorizes a dismissal of the prosecution. Any other construction would lend the sanction of the law to a seducer who was under minority to ply his seductive arts, and thus encompass the ruin of his victim, and afterwards depend on the interference of his parents to prevent the enforcement thereof." Polk v. State, 40 Ark., 482. Therefore, if the minority of the defendant, or the death of the prosecutrix will not relieve a party from prosecution for the crime of seduction, it would follow that the marriage of the prosecutrix to another party, after seduction and before the trial of defendant, would not relieve the party of the crime that he had committed, and because that the marriage of prosecutrix has interposed between the time of the commission of the crime and the trial would not in any way obliterate the crime. The prosecutrix having married and being in a position not to marry the defendant or accept an offer to marry him, it can not be said that the offer was made in good faith, because of the inability of the parties to consummate the marriage. We, therefore, hold that the court below did not err in refusing to dismiss the case, because the offer of the defendant to marry the prosecutrix was not in good faith on account of the inability of the parties to consummate the marriage. Following the reasoning in the Merrell and Harvey cases, supra, we must hold that defendant is not relieved from prosecution for the crime of seduction because the prosecutrix married another party and prevented him from offering to marry her after the institution of the prosecution.

On the trial of the case in the court below the court in his charge to the jury directed them that the witness Flora Dykes was an accomplice, and instructed them further that they could not convict the defendant upon the testimony of said Flora Dykes, unless the jury should first believe that her testimony was true, and that it shows or tends to show that the defendant is guilty as charged in the indictment and that there is other testimony tending to connect the defendant with the commission of the offense. This charge has

been frequently condemned by this court and in a proper case will be ground for reversal. The court should never charge a jury that the testimony of an accomplice must tend to show the guilt. This is requiring a less degree of proof than the law contemplates, and in a case where the testimony of the accomplice is weak in its character, it would not only be ground for reversal to give such a charge, but this court would feel called upon to reverse a case where such a charge was given. However, under the provisions of article 723 of the Code of Criminal Procedure, which provides that a case shall not be reversed unless the error committed in the trial court was prejudicial to the defendant, we hold that the charge in this case was not prejudicial to the defendant. The witness Flora Dykes had testified unequivocally and unconditionally to the promise of marriage, to the act of intercourse, and that she, in permitting said act, was prompted to do so by the promise of marriage and her devotion to the defendant. Therefore, her testimony does not *tend* to connect the defendant with the commission of the offense, but absolutely connects him with it, and if the jury believed her testimony was true, and that it showed beyond cavil the guilt of the appellant, there was but one issue to be ascertained by them in connection with her testimony, and that was as to whether there was other testimony tending to connect the defendant with the commission of the offense. The corroboration in this case consisted not only of the defendant keeping the company of the prosecutrix, calling upon her at her home, accompanying her day- and night to different gatherings—social and religious—in the community, but also consisted of a couple of letters which were produced and offered in evidence and identified as having been written by the defendant to the prosecutrix in which he spoke of his love and devotion to her, and that the same would last through life, and spoke of their coming marriage. The letters not only breathed words of love for the prosecutrix, but protested that the prosecutrix did not have the same love and was not willing to make the same sacrifices as himself. The first letter was written on July 4, 1905. This letter was addressed to the prosecutrix and commenced: "Dearest one." This letter was written about the time of the first act of intercourse. One significant expression in this letter is as follows: "I am very proud we were falsely alarmed the last time I seen you. Yes, have nearly gotten over the vexation." Further along in the letter he says: "That night I thought your decision would have to go if it did break my heart and wreck my life and take the sweetness out of my life. You ask me to come back and love you as before. I simply ask you to return to me as you asked me to. Though my love for you is as great and greater than yours for me." In this letter is also this ' expression: "Say, how will it do to arrange our business for this summer? It sure would suit me mighty well. Yes, you can depend on what I say about the future as sure as life goes on. (This is a

fact.) I have always loved you. I still and always and forever will. You asked me to come back, *queen* of May; I asked you *please will you* come back and love me as you have in the past. You can depend on me being anything you wish me to be to you, for this matter rests entirely with you; you can do as you wish, but oh! hope it will be to me as you once was—sure I do." From the tone of this letter we gather that the defendant not only was speaking words of love to the prosecutrix, but that she could depend upon him; that he would be true to her through life, and evidently the language in regard to arranging the business "for this summer" had reference to a consummation of marriage. We think the proof shows corroboration of a strong character. We think the prosecutrix is further corroborated in the fact that appellant, after his arrest, forfeited his bond and fled the country.

Appellant, in his motion for new trial, also complains that the court erred in not giving defendant's special charges Nos. 1 and 2. These charges were to the effect that if the jury found that the prosecutrix was not a chaste woman at the time she submitted to the embraces of the defendant, or that she had had intercourse with other men, that they would acquit. Both these issues were submitted by the court in his main charge to the jury for the court had directed the jury that they must find that she was a chaste and pure woman at the time she submitted to the embraces of the defendant, and unless they found that she was, they would acquit the defendant. We think that these issues were sufficiently submitted in the main charge.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### June 8, 1910.

McCORD, JUDGE.—At a former day of this term this case was affirmed. Appellant has filed a motion for rehearing in which he complains that this court was in error in holding that the charge as given by the trial court on accomplice's testimony, though incorrect, was harmless in view of the testimony offered on the trial of the case; and, second, that this court was in error in holding that the court below properly refused appellant's special charge No. 3. This charge reads as follows: "Gentlemen of the jury, you are instructed that although you may believe that the defendant was engaged to be married to the prosecuting witness, Flora Dykes, during the year 1905, but if you further find from the evidence that the defendant or anyone else had intercourse with the prosecuting witness, Flora Dykes, during the year 1904, you must acquit the defendant and say by your verdict not guilty." The court in his main charge instructed the jury as follows: "You are charged that before you can convict the defendant, you must believe from the evidence, be-

yond a reasonable doubt that the defendant seduced the prosecuting witness in Knox County, as alleged, and that at that time she, the said Flora Dykes, was a chaste woman, who had never had sexual intercourse with anyone prior to the 9th day of July, 1905, and unless you believe beyond a reasonable doubt that said Flora Dykes had never had such sexual intercourse with anyone prior to the time she had such intercourse, if any, with defendant in Knox County, Texas, you must find the defendant not guilty." When the case was originally submitted, our attention was not directed to the question of limitation. The bill of indictment was returned into the District Court of Knox County, on March 25, 1908. The offense of seduction is barred within three years. Hence, if the prosecutrix in this case was seduced in 1904, the offense would have been barred. The prosecutrix testified that the first act of intercourse between her and defendant was in July, 1905, and while they lived upon what was known as the McGee farm, west of Knox City. She testified further that it might be possible that she was mistaken as to whether the offense occurred in 1904 or 1905. The prosecutrix mother, Mrs. Dykes, testified that they moved to Knox County in 1901, and the first year they lived on the Steeve Reed place and then moved to the McGee place, lived there two years and then moved on the place where they are now living. Simon Goss testified that he saw the appellant and the prosecutrix in a compromising position in the spring of 1904; that he passed them in a buggy at night, and that he went on to church and that the defendant and prosecutrix came on in the church, and he stated to Lon Hopkins and Shaffer Smith when they came in what he had seen when he passed them; that the witness Goss left Knox County and moved to Jones County in the early part of 1905, and had not been back to Knox County. Lon Hopkins and Shaffer Smith took the stand and testified about the witness Goss telling them of this occurrence and the circumstances occurring that night and they fixed the date of it in 1904. It is sufficient to say that the testimony raises the issue as to when this offense was committed. Therefore, it was the duty of the court to have submitted it and the special charge of the defendant in this case to the effect that if the jury believed the intercourse was had in 1904, that they should acquit. In our original opinion we held that in view of the testimony in the case that the charge of the court on accomplice's testimony was not prejudicial to the defendant, though incorrect. As the case will have to be reversed, we would suggest to the trial court to follow the charge laid down by this court in the case of Campbell v. State, 57 Texas Crim. Rep., 301, 123 S. W., 583.

The motion for rehearing will, therefore, be granted, the judgment of affirmance set aside and the case reversed and remanded.

*Reversed and remanded.*