EARL POLK v. THE STATE.

No. 6470. Decided January 25, 1922.

Rehearing Denied March 22, 1922.

1.—Seduction—Bill of Exceptions—Affidavits—Practice in Trial Court.

The rule laid down in Hunt v. State, 89 Texas Crim. Rep., 89, as to affidavits, was not intended to intimate by the expression, "by affidavits showing that he had been denied his bill;" that the bills as qualified could be impeached by affidavits, but that affidavits could be resorted to where the trial judge had declined to file his bills in lieu of those marked "refused," in order to show that thereby appellant had been deprived of his bills altogether.

2.—Same—Duty of Trial Judge—Bill of Exception—Practice in Trial Court. ——Ex parte Affidavit.

This court must assume that the trial judge will allow to an accused on trial fair, full and correct bills of exception reflecting truthfully the occurrence at the time, and when qualification or explanation is attempted and is accepted and filed by appellant as his bill of exception, the truth of the qualification or explanation cannot be impeached by an *ex parte* affidavit.

3.—Same—Bills of Exception—Rule Stated—Answer Must be Shown.

A bill of exceptions, taken to the refusal of the court to permit a witness to answer a question whether on direct or cross-examination must show

what the answer of the witness would have been in order to entitle it to consideration on appeal. Following Lane v. State, 89 Texas Crim. Rep.. 140, and other cases.

### 4.—Same—Evidence—Cross-Examination—Supporting Evidence—Rebuttal.

Where the prosecutrix, in trial for seduction, testified that she had submitted to carnal intercourse with defendant at a certain time and place under a promise of marriage, and counsel for defendant subjected her to a severe cross-examination, and by many questions imputed a want of chastity to her, all of which she denied, and defendant failed to place the witnesses on the stand by which he had laid a predicate to impeach her, there was no error to permit the State to do so and support the prosecuting witness' denial of having carnal intercourse with them.

### 5.—Same—Supporting Testimony—Rule Stated—Prosecuting Witness—Stranger.

The rule that testimony in chief of any kind tending merely to support the credit of the witness is not to be heard except in reply to some matter previously given in evidence by the opposite party to impeach him, does not apply where the witness is a stranger in the community or occupies the relation to the case different from that of the ordinary witness. Following Rosa v. State, 86 Texas Crim. Rep., 646, and where the state's prosecuting witness was attacked not in her capacity as a witness, in the ordinary sense, but suggested matters, the truth of which, if established, would have left the State without a case, here was no error in permitting the State to call witnesses to refute the insinuations. Following Barber v. State, 69 S. W. Rep., 515.

### 6.—Same—Evidence—General Reputation—Subsequent Acts—Specific Acts.

Where, upon trial of seduction, the prosecutrix testified that she gave birth to a child in a certain community at a certain time, and claimed defendant to be the father of the child, there was no error in refusing to permit the defense to show that the general reputation of prosecutrix for virtue and chastity was bad, during the time she lived in said community, as this was subsequent to the date of the seduction. Distinguishing Davis v. State, 36 Texas Crim. Rep., 550, and other cases. However, the same objection would not be tenable where specific acts of unchastity subsequent to the alleged seduction where sought to be shown.

### 7.—Same—Sufficiency of the Evidence—Corroboration of Accomplice.

Where, upon appeal from a conviction of seduction. complaint was made in the motion for new trial that the evidence is insufficient to support the conviction in that the testimony of the prosecutrix was not sufficiently corroborated, but the record showed that the promise of marriage was fully proved and that the evidence corroborating the act of carnal intercourse was sufficiently shown by circumstantial evidence, there was no reversible error. Following Hinman v. State, 59 Texas Crim. Rep., 29, and other cases.

### 8.—Same—Rehearing—Corroboration—Sufficiency of the Evidence—Association.

Where appellant, in his motion for rehearing, contended that association between prosecutrix and appellant was the only thing shown in the testimony which could be considered as corroborative of her claim of carnal knowledge, but the evidence in the record showed a definitely proven engagement to marry followed sometime thereafter by a claim on the part

of prosecutrix of carnal intercourse between the parties; the exclusive association by appellant with prosecutrix; the birth of a child within the ordinary period of gestation, and other corroborative circumstances, the same was sufficient to support the conviction. Distinguishing Klepper v. State, 87 Texas Crim. Rep., 597, 223 S. W. Rep., 468, and other cases.

Appeal from the District Court of Sabine. Tried below before the Honorable J. T. Adams.

Appeal from a conviction of seduction; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Minton & Lewis*, for appellant.—On question of insufficient corroboration. Wooley v. State, 96 S. W., 27; Snodgrass v. State, 31 id., 366; Nash v. State, 134 id., 709; Slaughter v. State, 218 id., 767; Gorzell v. State, 63 id., 126, and cases cited in opinion.

*R. G. Storey*, Assistant Attorney General, for the State.—On question of bills of exception: Jones v. State, 229 S. W. Rep., 865, and cases cited in opinion.

On question of corroboration: Bost v. State, 144 S. W. Rep., 589; Knight v. State, 144 id., 967; DeRossett v. State, 168 id., 531 and cases cited in opinion.

HAWKINS, Judge.—Conviction is for seduction. Punishment three years in the penitentiary.

An unfortunate situation seems to have arisen with reference to the bills of exception. Quite a number of bills appear in the record with qualifications and explanations appended. These bills were approved on the 25th day of June, 1921, and were filed the 7th day of July. One attorney representing appellant, on the 16th day of July 1921, makes an affidavit to the effect that the qualifications attached to the bills are not supported by the record; that they are unfair and unjust to appellant and attaches to the affidavit the question and answer statement of facts upon the trial of the case and asks the court to examine same in connection with his affidavit to verify the truth of his criticism of the qualifications. We had occasion in Jones v. State, 89 Texas Crim. Rep. 6, 229 S. W. Rep. 865 and in Hunt v. State, 89 Texas Crim. Rep. 89, 229 S. W. Rep. 869, to discuss at some length bills of exception and the effect of accepting the same with the qualifications attached thereto, and the proper procedure in the event attorneys declined to accept the bills as qualified. In the Hunt case, supra, the following language was used. "The judge ought not to have filed the bills as qualified and explained by him without appellant agreed to accept them as so modified; however, when appellant ascertained that this had been done his proper course would have been a motion to withdraw them from the files and request the judge to cancel the qualifications and mark

them refused, with the further request that the judge prepare and file bills in lieu thereof; then if the judge declined to do so, he could have resorted to proper bystanders, or by affidavits showing that he had been denied his bills.'' It was not intended to intimate by the expression, ''by affidavits showing that he had been denied his bills'' that the bills as qualified could be impeached by affidavits, but that affidavits could be resorted to where the trial judge had declined to file his bills in lieu of those marked refused in order to show that thereby appellant had been deprived of his bills altogether. In a later case, Donohue v. State, 90 Texas Crim. Rep. 541 (decided January 11th, 1922) we had occasion again at some length to express our views as to the proper procedure where the trial judge denied the occurrence of the matters to which the bill related, or denied that any exception had been taken at the time. Attorney for appellant, in requesting this court to examine in connection with his affidavit the entire question and answer record of the proceedings upon the trial, is asking us to assume a burden which we must decline. The bills of exception, so far as the record discloses, were accepted by appellant with the qualifications and explanations attached thereto, and are filed as part of the record. We must assume that the trial judge will allow to an accused on trial fair, full and correct bills of exception reflecting truthfully the occurrence at the time. When this is attempted to be done by a qualification or explanation and is accepted and filed by appellant as his bill of exception the truth of the qualifications or explanations can not be impeached by an ex-parte affidavit. It will, therefore, be necessary for us to consider the bills in connection with the qualifications and explanations attached.

By bills of exception Numbers 1, 2, 3 and 4 appellant complains that the court declined to permit prosecutrix on cross-examination to answer certain questions propounded to her by counsel for appellant. Regardless of the qualifications, the bills are totally insufficient to be considered by this court. None of them show what the expected answer of the witness would have been. In this state of the record it is impossible for the reviewing court to know whether any injury has been done, even though the testimony sought was not permitted. ''A bill of exceptions taken to the refusal of the court to permit a witness to answer a question whether on direct or cross-examination must show what the answer of the witness would have been in order to entitle it to consideration on appeal.'' Under this headnote on page 136 of Branch's Anno. P. C. are more than thirty cases cited supporting the note. Recent cases to the same effect are Lane v. State, 89 Texas Crim. Rep. 140, 229 S. W. Rep. 547; Hill v. State, 89 Texas Crim. Rep. 450, 230 S. W. Rep. 1005; Crisp v. State, 89 Texas Crim. Rep. 502; 231 S. W. Rep. 392.

Bills of exception Numbers 6, 7, 8 and 9 raise the same question and will be treated together. After prosecutrix had testified that she had submitted to carnal intercourse with appellant for the first time

in May 1919 under a promise of marriage counsel for appellant subjected her to a severe cross-examination and by many questions imputed a want of chastity to her, which questions if answered in the affirmative by her would have practically destroyed the State's case. She was asked "if she did not at one time before she ever became acquainted with appellant permit one Judge Bennett to put his arms around her and hug and kiss her and take her on his lap at Chester Bennett's house, and if Chester Bennett did not reprimand them and tell them such conduct would not be permitted in his house." She was further asked "As a matter of fact, isn't it true that over a period of more than a year and a half or two years you had been promiscuously having intercourse with men in the community . . . I will say with Bud Cohn, Aaron Boyett, Judge Bennett, Avery Hogan, L. J. Hunnicut, and Dewey Buckley?" All these questions were answered by prosecutrix in the negative. After the State had rested its case appellant failed to call any witness to affirm the truth of the matters suggested in the questions, although some of the parties named were present in court. Upon the defendant resting the State called Judge Bennett who testified that no such thing as intimated by the question ever occurred between him and prosecutrix at the house of Chester Bennett, and Chester Bennett testified to the same effect. The State was also permitted to prove by Dewey Buckley and Bud Cohn that they, nor either of them, ever at any time had carnal intercourse with prosecutrix. Objection was urged to the testimony of all these witnesses upon the ground that the same was not in rebuttal to any testimony offered by appellant, and because the same was prejudicial and injurious to appellant, and was inadmissible because it tended to improperly bolster up the testimony of the prosecutrix. Appellant rests his contention that such testimony was inadmissible upon the rule stated in Conway v. State, 33 Texas Crim. Rep. 327, as follows: "No principle in the law of evidence is better settled than the one enunciated in the rule that testimony in chief of any kind, tending merely to support the credit of the witness, is not to be heard except in reply to some matter previously given in evidence by the opposite party to impeach it. When this evidence was introduced, nothing had been given in evidence by defendant to impeach the credit of the witness, and it was for that reason clearly incompetent." As to the correctness of the general rule stated in the Conway case there can be no question. It is supported by many authorities collated in Branch's Crim. Law, Section 875, pages 557-578, and also by numerous text writers. We do not agree with appellant as to the application of the rule to the facts of the instant case. We think it is an exception to the general rule and more akin to the doctrine announced in Phillips v. State, 19 Texas Crim. App. 158, and Harris v. State, 49 Texas Crim. Rep. 338, 94 S. W. Rep. 227. These causes are based upon the cross-examination of a stranger of such character as tended to bring him into disrepute before the jury

and indirectly seriously attack his testimony, which was intended to convey to the mind of the jury that his whole testimony was false. While it is true the prosecutrix may not have been a stranger in the community where she testified, yet, she occupied a relation to the case different from that of the ordinary witness. That the questions asked tended to bring her into disrepute before the jury and to intimate that her averments as to her previous chastity were false there can be no question. That if the questions had been answered in the affirmative by her it would have destroyed the State's case there can be no doubt. It occurs to us the conditions were somewhat similar to those discussed by us in Rosa v. State, 86 Texas Crim. Rep. 646, 218 S. W. Rep. 1056, with the exception that in the Rosa case the conduct complained of was that of the county attorney, and in the instant case the questions propounded were by counsel for appellant. While Rosa was testifying as a witness in his own behalf he was asked if he had not been convicted in Hoboken of a felony and served a term in the penitentiary in New York; if he had not in the State of New York gone by a different name than that of Rosa, and many other questions of like import. No effort was made by the State to follow up these questions and the case was reversed because of the misconduct of the county attorney. After the State had asked Rosa the questions complained of and had then closed its case without following same up, surely it could not be insisted with any logic that if Rosa had had a witness present who could have denied the imputations contained in the questions that he should not have been permitted to give the jury the benefit of the denial. So, in the instant case, the attack directed at the prosecutrix was not directed at her in the capacity of a witness in the ordinary sense, but suggested matters, the truth of which, if established, would have left the State without a case. Some of the very parties connected with the insinuated transactions were present and yet appellant failed to call them to substantiate the truth of the imputations contained in the questions. The principle appears to be sustained in Barber v. State, 39 S. W. Rep. 515. In that case, upon cross-examination of a witness he was asked if he had not made certain statements, to which he replied either that he did not say that, or that he did not say it that way. On re-direct examination the witness was permitted to state what he did say and the circumstances under which he said it; the objection being urged that appellant had not introduced any part of the statement but had simply asked the witness whether or not he had made them, and the witness had answered in the negative. We quote from the opinion as follows:—

"We do not understand that it is necessary to impeach a witness by controverting his statement, before he can be supported. If an unsuccessful attack is made to impeach a witness, he may be supported. Unquestionably the predicate was laid here for the contradiction of the witness. He did not absolutely deny making the

statement, but admitted making them in some qualified way. Consequently it would have been admissible for the defendant to have put on witnesses testifying that appellant had made ·the statement in the exact terms inquired about. If he had put on one or more witnesses who failed to impeach him, we take it that this abortive attempt would have authorized the witness to be supported. However, defendant did not go so far, but the effect of his attempt was to leave the witness under the imputation that he had made some such statement as that inquired about, in effect contravening or contradicting his evidence while on the stand. Under the circumstances, we believe it was competent for the State to show, in explanation of the witness' answer, exactly what he said on that occasion, and how he came to say it.''

Unquestionably in the instant case while appellant did not undertake to prove the truth of the matters which prosecutrix denied, yet, the effect of his attempt by cross-examination was to leave the witness under the imputation that she had been having acts of intercourse with the parties inquired about, and was generally guilty of conduct indicating unchastity. We think no error was committed in allowing the State to call witnesses to refute the insinuations.

Prosecutrix testified that she became acquainted with appellant in February, 1919, at which time she was living with her father on what was known as the Boyett place; that the act of seduction occurred in May of that year; later on in the same month her family removed from the Boyett place to Lamerle. While living at Lamerle she became pregnant in February, 1920, and gave birth to a child in November of that year; prosecutrix claimed defendant to be the father of the child. After she had testified to these facts appellant offered to prove (bill of exception No. 5) by J. N. Hunter that the general reputation of prosecutrix for virtue and chastity was bad during the time she lived at Lamerle. This was subsequent to the date of the seduction and in a community where the pregnancy of prosecutrix became apparent and where she gave birth to the child. Objection was urged by the State to the admission of such testimony on the ground that it related to the reputation of the prosecutrix since the time of the alleged seduction. The court permitted an examination of the witness on his voir dire for the purpose of determining whether he was qualified to speak as to the general reputation of the witness, and having developed his testimony in full in the absence of the jury, sustained the objection. We make no comment upon whether the witness was sufficiently qualified to testify, but base our discussion upon the objection that the reputation of prosecutrix subsequent to the date of the seduction could not be inquired into. So far as we are aware this court has not spoken upon the exact question before us. We have made search for authorities from our own State and none have come to our attention. Appellant refers us to Davis v. State, 36 Texas Crim. Rep. 550, and Creighton v. State,

41 Texas Crim. Rep., 101, 51 S. W. Rep. 910, as supporting the admissibility of this testimony. The cases cited and many others may be found in our reports holding that proof of acts of intercourse or other acts of unchastity with other parties subsequent to the date of the alleged seduction may be shown, not as a complete defense, but to be considered by the jury in determining the chastity or otherwise of prosecutrix at the time of the alleged seduction. In Knight v. State, 64 Texas Crim. Rep. 541, it was held that in order to establish the virtue of the female alleged to have been seduced resort could be had to proof of her general reputation for virtue and chastity, and that in like manner the accused could attack her virtue, but the question did not arise as to whether it should be restricted to such reputation at the time of or prior to the seduction. We disclaim any intention of expressing our approval of the doctrine that proof of reputation as to chastity, or otherwise, can be generally resorted to. We are considering only the question, that, if permissible at all, should the inquiry be extended to a time subsequent to the date of seduction. In People v. Brewer, 27 Mich. page 134, this exact question was before the court, and Justice Cooley, uses the following language: ''The first error assigned relates to the refusal of the court to allow the defendant to give evidence that the reputation of the complaining witness for morality and virtue in the neighborhood where she resided was bad. Questions were put to several witnesses for the avowed purpose of drawing out such evidence, but in every instance the time inquired about was the time of the trial. It does not, therefore, become necessary for us to consider whether the woman's reputation at the time or previous to the alleged offense could be proved or not, as it is manifest that her reputation in that regard would be injuriously affected by the offense itself when made known, so that if the bad reputation could be made use of by the defense, the very crime would become the means of protecting the criminal, and the more notorious the seduction the more certain would be the immunity from punishment.'' We are unable to add to the reasoning of this learned jurist anything further which would indicate that testimony as to the general reputation of the prosecutrix for virtue and chasitty subsequent to the time of the alleged seduction should not be allowed. The condition of pregnancy existed at the time prosecutrix was living in the neighborhood of the witness Hunter and she gave birth to a child at that place. It was known that she was an unmarried woman. However virtuous she may have been at the time it is alleged she was seduced by appellant there can be no question that subsequent developments, if known, would have caused general comment unfavorable to her and it appears manifestly unjust to have permitted proof of general reputation based upon a condition brought about by what the State was contending to have been appellant's wrongful act. The same objection would not be

tenable where specific acts of unchastity subsequent to the alleged seduction was sought to be shown.

Complaint is made in the motion for new trial that the evidence is insufficient to support the conviction, in that the testimony of the prosecutrix was not sufficiently corroborated. We are unable to agree with this contention after having carefully examined the statement of facts. We can see no useful purpose to be accomplished in setting out the evidence in detail. It shows that prosecutrix became acquainted with appellant during the month of February, 1919; prior to that time she had received the company of other young men and had gone with them to dances and other entertainments. After having met appellant she received the company of no other, but he was a constant visitor at the home of prosecutrix and accompanied her to dances, parties and other entertainments. The testimony of prosecutrix as to an existing engagement between them was supported by the testimony of her sister which is criticised by appellant to some extent, but was before the jury, and authorized them to accept the same as corroborative of the testimony of the prosecutrix in that respect. The father testified, without objection so far as the record discloses, that he knew his daughter was preparing to marry appellant. That a conviction for seduction may be sustained where the testimony of prosecutrix is corroborated by circumstantial evidence tending to show appellant guilty is not an open question in this State. Creighton v. State, 61 S. W. Rep. 493; Hinman v. State, 59 Texas Crim. Rep. 29, 127 S. W. Rep. 221; Thorp v. State, 59 Texas Crim. Rep. 517; 129 S. W. Rep. 607; Nash v. State, 61 Texas Crim. Rep. 259, 134 S. W. Rep. 709; Hayes v. State, 72 Texas Crim. Rep. 249; 162 S. W. Rep. 870. Other cases to the same effect may be found of more recent date than the ones cited.

Having found no errors in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

LATTIMORE, Judge.—In an exceedingly clear and forceful motion for rehearing in which many authorities are reviewed, appellant insists that there is not sufficient corroboration of the prosecutrix as to the fact of the alleged carnal intercourse between them. It seems not to be seriously contested that she is sufficiently corroborated as to the promise of marriage, it appearing in the record that her sister testified to having overheard appellant ask her to marry him and her assent to said proposition; also that her father testified that she was preparing to marry appellant.

We cannot assent to appellant's proposition of fact, which is that association between prosecutrix and appellant was the only thing shown by the testimony which can be considered as corroborative of her claim of carnal knowledge. Without attempting to enumerate such others, we think that a definitely proven engagement to marry,

followed some time thereafter by a claim on the part of the prosecutrix of carnal intercourse between the parties, might be considered as a circumstance. We know of no case in which this court has ever held that continued and intimate association between the parties prior to and about the time of the alleged intercourse, was not provable on the part of the State; the manifest purpose of such evidence is to corroborate her assertion of intercourse. We think it would be manifestly erroneous for this court to assume to itself the prerogative of laying down a rule as to the quantum of corroborative evidence necessary in any given case. Our duty is to ascertain whether there be any evidence tending to connect the accused with the commission of the offense, in a case in which the conviction rests mainly upon the testimony of an accomplice and the question of the sufficiency of the corroborative evidence is raised. It is true this court seems to have always held that the prosecutrix in a seduction case must be corroborated both as to the promise of marriage and the fact of the carnal knowledge between the parties. As applied to the question of such corroboration of the fact of carnal intercourse, it occurs to us that a fair statement of such corroborative evidence of such fact would be that there must be evidence in the record independent of that of the prosecutrix tending to show carnal intercourse between the parties. In the instant case prosecutrix gave birth to a child on November 19, 1920. Calculating the ordinary period of gestation would seem to fix the conception of said child at some time in February of said year. Prosecutrix testified that she began going with appellant in February 1919, and that from said time she went with no one else until after the acts testified to by her of February, 1920. Her aunt testified that no other man went with prosecutrix during so much of said period of time as she was living near them and had opportunity to observe who went with prosecutrix. Her sister bore witness to the fact that no other man went with her after appellant began keeping company with her. It has often been asserted that the law presumes every woman to be chaste until the contrary is made to appear. There is no suggestion in this record of unchastity on the part of prosecutrix prior to the beginning of her intimacy with appellant. It is true that in his cross-examination of her appellant asked her many questions which if answered as apparently desired, would have shown her intimacy with others, but she denied such matters in toto, and upon its rebuttal the State produced each one of the parties thus inquired about as being intimate with prosecutrix, and by them entirely negatived the truth of any of the matters affecting her chastity and about which appellant had inquired on such cross-examination. Assuming chastity on the part of prosecutrix when she began going with appellant, and also bearing in mind that human experience teaches that chaste women do not yield their bodies to chance acquaintances or strangers but to those only who have won their affection and confidence, we observe that in all cases

where an illegitimate child is born and the mother declines to dis-
close the secret of its paternity, upon investigation the first inclination
of the investigator would be to ascertain with whom the seduced fe-
male had been keeping company and with whom she had been most
associated. It will not be gainsaid that if the evidence disclosed
opportunity and association of only one man, further inquiry as to
the paternity of the child would be needless. Reasoning further it
would not require lengthy discussion if the investigation disclosed
much association and opportunity of one man and an occasional
and chance association with another, the fair mind of the investigator
would more readily accept belief in the paternity of the constant
and intimate friend. In Klepper v. State, 87 Texas Crim. Rep., 597,
223 S. W. Rep. 468, which is cited by appellant, we used the follow-
ing language:

"Nor can we agree that there is no corroboration of the prosecu-
trix in this case. By the terms of article 789 of Vernon's C. C. P.,
the only corroboration that is required is that there be evidence
other than that of the prosecutrix which tends to connect the defend-
ant with the offense charged. This opens a field as wide as one can
imagine, leaving it to a fair judgment as to whether or not there be
evidence in a given case which, independent of that of the prose-
cutrix, tends to show that the accused is guilty. When an unfortu-
nate situation develops, such as appears in the instant case, with re-
gard to a young woman, it seems not unreasonable that the first and
natural inquiry would be as to what man has been most frequently
with her, and who would appear from ordinary observation to have
enjoyed most of her favors, and, if this inquiry be met by proof
that some one particular individual has been most frequently with
her for quite a while and on more than usual terms of intimacy with
her, this fact would appear to tend to show him to be the party
responsible."

In Fine v. State, 45 Texas Crim. Rep. 290; 77 S. W. Rep. 806,
which is also cited by appellant, this court, in referring to the ques-
tion of corroboration as to the matter of intercourse, used the follow-
ing language.

"In this particular case, according to the prosecutrix's testimony,
she had been engaged to appellant about six months at the time she
claims to have been seduced; and we may concede that, as to the ap-
pellant having intercourse with prosecutrix, from the fact that he
had continuous opportunities to have had such intercourse, and,
moreover one witness testified that he saw them in the act of inter-
course on one occasion, she is abundantly corroborated as to the inter-
course."

In other felonies where the question of corroboration of an ac-
complice has been before this court, many cases might be cited where
the association of the accused with the alleged accomplice, shown by
other testimony than that of the accomplice, has been held sufficient

to corroborate the accomplice testimony. The only statutory direction is that there be evidence independent of the alleged accomplice which tends to connect the accused with the offense committed, and as stated above, when an examination of the record satisfies this court that there was evidence introduced before the jury which did tend to connect the accused with the commission of the offense, however slight, this court would decline to reverse. Nourse v. State, 2 Texas Crim. App. 306; Jones v. State, 4 Texas Crim. App. 531; Simms v. State, 8 Texas Crim. App. 243; Moore v. State, 47 Texas Crim. Rep. 415; Nash v. State, 61 Texas Crim. Rep. 264; Murphy v. State, 65 Texas Crim. Rep. 55, 143 S. W. 618. There was no evidence of any weight or in anywise calling in question that of the State, introduced on behalf of appellant. All of the reflections upon prosecutrix arising by reason of the rigid cross-examination and its extension into matters affecting her chastity, were completely overthrown by the State's rebuttal testimony. Mr. Branch in his valuable Annotated P. C., p. 1457-8, cites many authorities in support of the proposition that when the jury have solved the questions presented in the testimony under a fair and proper charge of the court, and have found defendant guilty of seduction, and their verdict has been approved by the trial judge whose duty it is to set it aside if not satisfied therewith, and there is sufficient evidence in the record if believed to sustain the verdict, it will not be disturbed on appeal unless under the facts it is clearly erroneous. We are not inclined to agree that the prosecutrix in her claim of carnal knowledge on the part of appellant, was wholly without corroboration, as that term is defined by law, of her testimony. So believing, appellant's motion for rehearing will be overruled.

*Overruled.*