85 N.J. Super. 312 (1964)
204 A.2d 617
STATE OF NEW JERSEY, PLAINTIFF,
v.
JAN COLWELL HALL, DEFENDANT.
Superior Court of New Jersey, Bergen County Court, Law Division (Criminal).
Decided October 28, 1964.
*313 Mr. Frank Wagner, Assistant Prosecutor, for plaintiff (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney; Mr. Ronald Picinich, on the brief).
Mr. Arthur J. Lesemann for defendant (Mr. Benedict E. Lucchi, attorney).
G.H. BROWN, J.C.C.
Following his trial and conviction for the crime of seduction, defendant Hall was sentenced on November 27, 1963 to State Prison for a term of four to six years. An appeal from the conviction and sentence is now pending in the Appellate Division.
The prosecutrix married another man on May 4, 1964. Defendant now moves for an order discharging him from the sentence of imprisonment. His application is based on the second paragraph of the pertinent seduction statute (N.J.S. 2A:142-2):
"Any single man over the age of 18 years who, under promise of marriage, has sexual intercourse with a single female of good repute for chastity, under the age of 21 years, she thereby becoming pregnant, is guilty of a high misdemeanor.
If the offender marries the female at any time before sentence, the sentence shall be suspended and he shall be discharged from custody; and if he marries the female after sentence, he shall be discharged from imprisonment."
At no time since the offense, which occurred on April 19, 1962, has defendant offered or agreed to marry the victim. It is argued, though, that her action in marrying someone else has made it impossible for the defendant "to avail himself of the right granted" by the statutory proviso.
Prejudice to defendant allegedly consists in requiring his continued imprisonment after the policy of the statute has *314 been satisfied. According to his rationale, the legislative purpose is "not simply to punish the defendant and deter him and others from future wrongdoing"; rather, its concern is for the victim  to convert her status of unmarried pregnancy "into one which is socially acceptable: married and pregnant, or married and a mother." Since the prosecutrix now has the desired social standing, defendant must be discharged, so runs the argument.
There is case law to illuminate in some part the intention of the Legislature in the enactment of N.J.S. 2A:142-2.
Refusal to marry is not an element of the crime  express or implied. A statutory prototype, enacted in 1876, was before the court in Zabriskie v. State, 43 N.J.L. 640 (E. & A. 1881). The "essential elements" of the offense were itemized without mention of more than a promise to marry. The argument advanced in the case at bar that "defendant's refusal to comply with his promise of marriage is an essential part of the crime of seduction," is not supported by the citation of authority.
Succession of pregnancy is the gist of seduction. Present that condition, induced by a promise of marriage (offered in good faith or not, performed or not), and the crime of seduction has been committed:
"It will be observed that the ensuance of pregnancy is the essential condition of this punitory legislation, the gravamen of which is, not the mala mens of the offender, but the physiological result of his offense. By it fornication is not malum in se, but the production of pregnancy is malum prohibitum." Price v. State, 61 N.J.L. 500, 502 (Sup. Ct. 1898)
There is one aspect of the legislative policy which is crystal-clear. When an act of seduction has transpired, a crime has been committed. It is denominated a high misdemeanor.
It is argued in the defendant's brief that
"The second paragraph of N.J.S. 2A:142-2 grants a defendant the absolute right to be discharged from imprisonment by marrying the victim of his `seduction.'"
*315 To regard one convicted of a crime as being clothed with an "absolute right" of any sort is to introduce an anomaly into the criminal law. There is no reason to believe that the Legislature meant to do it here. The language of the statute relied upon by the defendant in this case describes him as an "offender." Furthermore, the statute states that upon marriage "the sentence shall be suspended." (Emphasis added) The marriage affects the sentence; it does not affect the conviction. It suggests a completed crime with a grace provision upon a contingent event. "Suspended" implies a stoppage and does not have the import of words like "annul," "void" or "vacate," which the Legislature might have used. Thus, defendant is punishable for a crime against the State in the name of which he was prosecuted. It is significant that by the language of the statute the victim does not figure as an actor whose conduct can effectually alter the defendant's position vis a vis the community at large until after he has been adjudged guilty.
It has not been said in the statute that some condition subsequent to sentence will mitigate or undo the offender's criminality. The provision simply is that
"* * * if he marries the female after sentence, he shall be discharged from imprisonment." (Emphasis added)
The key word is "marries." It must be construed as it is commonly understood  entry into a marriage. A marriage is a consensual union. The offender marries the female only if she will marry him. Assertion of an "absolute right" to marry the prosecutrix implies that she has a reciprocal duty. The language of the section bespeaks no such obligation. It would be very strange if the victim of a crime should thereafter owe something to the malefactor.
The defendant complains that he has been deprived of the benefit of the proviso by her "unilateral act." It amounted to nothing else except her decision to marry someone else. The real question is whether the prosecutrix was meant to be *316 deprived of her freedom to marry as she pleases. Such an intention cannot be inferred.
A case most favorable to an offender in defendant's position would be one where the only impediment to the marriage would be the unilateral act of someone other than the victim. Craft v. Jachetti, 47 N.J.L. 205 (Sup. Ct. 1885), presented such a situation. At issue was the liability of a minister for payment of a statutory penalty because he solemnized the marriage of a minor without the consent of his parents. The clergyman defended on the ground that the underage male contracted the marriage with the victim of his alleged seduction in order to be discharged from custody. It was held that since the minor was only accused of the offense, he was not yet within the scope of the statute as an "offender." But the court went on to say that the seduction act of 1876 (containing a proviso similar to the one in the current law) did not affect the ordinary requirement of parental consent for the marriage of a minor. The court said:
"Marriage will relieve a person offending against the Seduction act from some of the penalty imposed for his crime. But the marriage must be solemnized according to our statute. If one of the contracting parties is a minor, the consent required by the act must be obtained, or the clergyman or officer officiating will render himself liable to the penalty prescribed. The minor who offends against the Seduction act, and desires by a marriage to be relieved from some of the punishment ensuing thereon, must obtain the required consent, or the clergyman or officer may refuse to solemnize his marriage contract." (at p. 207)
A seducer is benefited by the legislative policy only if he marries the victim, and the marriage must be contracted in accordance with all conditions which would govern if there were no context of constraint. One of such conditions is the acceptance of his marriage offer. If a minor offender is barred from discharge because he cannot obtain the consent of his parent to marry a willing victim, then the "unilateral" rejection by the offended female of a marriage offer should give him no greater advantage.
*317 There is much case law in other jurisdictions bearing on the conduct of seduction offenders as it affects punishment. A large number of the decisions are inapposite. In many instances those courts were dealing with statutes which expressly made a good faith offer of marriage effectual. And in nearly all of the out-of-state opinions, regardless of the exact form of conduct required of the offender to qualify for grace, it appears as a fact that he made an offer to marry or did something constituting colorable compliance with the statutory proviso. That is not the case here. Defendant made no overture of any kind toward the prosecutrix during the two-year period between the date of the offense and her marriage to another. The consensus of foreign decisions is that even a sincere attempt to marry would be unavailing under a statute like N.J.S. 2A:142-2. An annotation in 80 A.L.R. 833 (1932) states:
"In jurisdictions * * * where only marriage has been made a statutory matter of defense [to seduction], the weight of authority seems to be that a mere offer of marriage, though bona fide, cannot avail one accused of seduction." (at p. 847)
Only one case has been found which is factually relevant to the unique situation presently before the court  Thorp v. State, 59 Tex. Cr. R. 517, 129 S.W. 607, 29 L.R.A., N.S., 421 (Tex. Cr. App. 1910). Appellant had been indicted for seduction. The statute provided:
"If the parties marry each other at any time before the conviction of the defendant, or if the defendant in good faith offer to marry the female so seduced, no prosecution shall take place, or, if begun, it shall be dismissed * * *."
After the offense the prosecutrix married another man who was still her husband at the time of trial. When the State moved the trial, appellant filed a verified marriage offer. The trial court refused to dismiss the indictment and conviction followed. On appeal it was contended that because of the marriage of the prosecutrix, the right or privilege of marrying *318 her had been denied unjustly. The contention was rejected. The court quoted from the language of another decision as follows:
"It will be seen that the statute with reference to seduction makes the offense complete when carnal knowledge of the female is procured by virtue of a promise to marry, and the subsequent article simply authorizes a dismissal of the case under certain contingencies. These contingencies are the marriage of the parties, or an offer made on the part of the seducer in good faith to marry the prosecutrix. We take it that `good faith' here means ability to consummate the marriage. The law requires a promise to marry to be made in good faith, and takes no note of appellant's inability to consummate the marriage. As far as the crime is concerned, it is already committed, and appellant can only escape punishment for his crime by complying with the statute that authorizes a dismissal of the prosecution." (129 S.W., at p. 608)
The substance of reasoning for disposition of defendant's pending motion was articulated by the court in People v. Hough, 120 Cal. 538, 52 P. 846 (Cal. Sup. Ct. 1898), with respect to a statute making marriage between the parties prior to information or indictment a bar to prosecution. The accused seducer asked for an instruction to the jury that the verdict should be "not guilty" if his failure to marry the prosecutrix before the filing of the information was by reason of her refusal. It was held that the instruction was properly refused. The court said:
"The statute which provides that marriage of the parties shall be a bar to a prosecution is a most wise and just provision. Yet the woman is not compelled to condone the offense by marrying the man, and thus freeing him from the penalties of the law. Upon the seduction her affection for him may change to hatred, or thereafter her belief as to his good character may be displaced by knowledge that he is a felon. Indeed, whether or not the reasons which actuate her in refusing to marry him are good or bad is of no moment. She is the sole arbiter upon that question, and the man takes those chances when he obtains his pleasures under the circumstances here presented. It does not lie in his power to escape the penalties of the law by reason of his willingness to carry out his marriage promise. The woman has the power and the right to decline the marriage, and, when she has so declined, the road to his successful prosecution is free and unobstructed."
*319 The defendant here argues for a construction of N.J.S. 2A:142-2 pursuant to which he is deemed to have some sort of continuing status with respect to his victim. He asks the court to consider how her conduct since the offense has affected his post-conviction position. The statute does not in any way direct attention to a relationship of this sort. He has not married her. Because that contingency has not occurred, there is no reason for intruding into the circumstances of her personal life whatever they may be.
The defendant's motion for an order discharging him from the sentence of imprisonment must be denied.