### R. E. BRYAN v. THE STATE.

#### No. 3896. Decided June 17, 1908.

**1.—Receiving Stolen Property—Ownership.**

Where upon trial of receiving stolen property, the ownership was alleged in a minor son who was living with his father, under his direction and control, the father having the right, and exercising the same, to control the son and the alleged stolen property, which consisted of horses which the son under his father's direction rounded up in camp, this did not constitute ownership in the said minor son. Following Frazier v. State, 18 Texas Crim. App., 434.

**2.—Same—Charge of Court.**

Where upon trial for receiving stolen property ownership was alleged in the minor son and the proof showed legal ownership in his father the court erred in refusing a special charge that it devolved upon the State to prove ownership as alleged.

**3.—Same—Extraterritorial Offense—Insufficiency of Evidence.**

Where the indictment alleged that defendant received stolen property in the Territory of New Mexico, and brought it into this State, and the evidence failed to support such allegation, the conviction could not be sustained.

**4.—Same—Charge of Court.**

Where in a prosecution for receiving stolen horses in New Mexico and bringing them into Texas, the evidence failed to show that the horses were stolen in New Mexico, or that defendant had received them there, or had not come by them honestly, the conviction could not be sustained.

Appeal from the District Court of Deaf Smith. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of receiving stolen horses; penalty, five years confinement in the penitentiary.

The opinion states the case.

*J. T. Montgomery & L. W. Dalton,* for appellant.—On question of ownership: Cited cases in opinion. On question of failure to charge on possession of property recently stolen: Williams v. State, 30 Texas Crim. App., 330.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment contains several

counts, the second of which was submitted to the jury by the charge of the court. This charges that appellant received from J. W. Bailey a horse that had been previously stolen by Bailey from Earl Elliott, the owner, in the Territory of New Mexico, and that the reception of said horse by appellant from Bailey occurred in New Mexico, and that thereafter the horse was brought by appellant into Deaf Smith County in this State where this prosecution was had.

1. It is contended that the ownership and the want of consent were not properly alleged in Earl Elliott, because the undisputed facts show that he was neither general nor special owner of the alleged stolen horse. In this connection Earl Elliott testified that none of the stolen horses belonged to him as a matter of fact; that all of them belonged to his father and his brothers; that at the time of the taking he was under 21 years of age; that his father had just bought a place, had no pen or inclosure for his horses; that they were running loose on the range; that he and his brothers worked together in partnership and one had as much control over the property as did the others; that this new settlement they had made belonged to his father and his brothers; that at the time of the loss of the horses he and his father were at this new place and he was attending to the stock, and looking after them at the time they were taken. The horses were at the time on the range and witness went out every day to look after them. He and his father were at home and alone at the time the horses were missed; that he hunted for the horses under his father's direction. The father, J. W. Elliott, testified that Earl and Guy Elliott were his sons; that in February, 1907, at the time the horses were taken he lived in Cuervo County, New Mexico; that at that time his business was raising horses and farming and he was living at what he called Palomas, and had been staying there about two weeks when the horses were taken; that he had removed from about twenty miles from the south to that point; that two or three of his sons stayed with him and made that their home; that there was only one of the boys at home at the time the horses were taken, which was Earl; that two of the boys, Guy and Walter, were at the old place over on the Charkee; that they were with cattle at that point and that the other boy was down on the Rio Grande and had been some months; that Earl was attending the stock while witness was building the house; that the stock were on the range and Earl looked after them. This witness did not give his personal attention to the stock, this was confided to the boys. This witness had bought a new place and moved to it, leaving his family at the place from which they had moved. He had assumed possession of his new place and premises. He further stated that he had personal possession of all of the cattle and horses up there and that they drove them over there a week or ten days before; that they were herding them and were rounding them up every day; that they were running on the range. Guy Elliott testified that he and his father and brothers were camping at the new place; that they had about twenty saddle horses and twenty-

one stock horses. This witness was not at the camp when the horses were taken. They moved to this place about the 4th of January; that Earl was living with his father at the time as was this witness, but his mother was living at the old place from which they moved; that none of the horses stolen were the property of Earl Elliott, the alleged owner; that they were in Earl's charge, that is, he looked after them. Witness' father and brother, Earl, were holding the camp. This witness testified that his father had charge of the property. This is the substance of the testimony relating to this particular question. We are of opinion that the ownership under the facts stated, was in the father and not in the son. Frazier v. State, 18 Texas Crim. App., 434; Bailey v. State, 18 Texas Crim. App., 426; Emmerson v. State, 33 Texas Crim. Rep., 89; Clark v. State, 23 Texas Crim. App., 612; Buchanan v. State, 24 Texas Crim. App., 195; Thomas v. State, 1 Texas Crim. App., 289; Roeder v. State, 39 Texas Crim. Rep., 199; 45 S. W. Rep., 570 and cases there cited. Our statute provides that ownership is constituted by the actual care, control and management of the property and as a general rule the ownership may be alleged in the general or special owner or in any one of joint owners. Here we have a case where a minor son was living with his father, under his direction and control, the father having the right, exercised it, to control the son and the property, and under his father's direction the son was looking after the horses running about the camp and rounding them up every day to avoid their straying off. This did not constitute ownership in the minor son. He was under the direction and control of his father, and so far as the statute in regard to ownership is concerned, merely acting in the capacity of a servant or employee, and his ownership here was limited by the testimony simply to looking after the horses temporarily, on the range and under the direction and control of his father. Under the rule laid down in the Frazier case, supra, the minor son, under the facts stated in this record, could not and would not be the owner as contemplated by our statute. As was said in that case: "Manifestly it was never intended that a person who was caring for a horse, for instance, one who is simply currying him as a hostler in a livery stable, was to be held in such possession and ownership as that the horse when stolen from the stable could have been said to have been taken from his possession." Under the facts stated, the father, J. W. Elliott, was in the actual control and management, his minor son being simply his servant or employee looking after the animals as would any other servant or hired hand, and under the immediate supervision of the owner, the father.

2. It is contended that the court should have given the special charge substantially to the effect that it devolves upon the State to establish the allegation of ownership by legal evidence beyond a reasonable doubt in Earl Elliott, before a conviction would be authorized, and if there is a reasonable doubt of that fact then an acquittal should follow. Doubtless if this charge had been given the jury would have acquitted. In

other words, the jury should have been told in some way that the owner-ship must be proved in Earl Elliott as alleged.

3. It is contended that the evidence is not sufficient to show that Bailey committed the theft of the horses in New Mexico and that appellant received them from Bailey in New Mexico. The horses were taken about February 1st, at least they were missed by the owner on February 2nd. Bailey was a telegraph operator at Cuervo, New Mexico, some distance from the place where the horses were taken. The evidence constituting Bailey the taker if sufficient, is substantially as follows: Clark testified that on February 5th or 6th, after the horses had been taken on the first or second, he saw appellant about three miles from the Texas line driving a bunch of horses in New Mexico, going East, which would throw him in the direction of the Texas line. The following morning he saw appellant again; that he came to witness' house riding a dun horse, the same horse he was riding the previous day, and told witness that he was returning to meet the wagon. Appellant told witness that he had been in the cattle business and that he had gathered up his horses and was going to Clarendon; that his wife was at Hobart, Oklahoma, and that he was en route to that point and that the fellow with him was a telegraph operator whom he had hired to help him, appellant, drive the horses; that he had bought the horses and had gotten rid of his cattle. This witness testified that there were two men with the horses when he saw them. The next witness who testified in regard to this matter was Laughlin. This witness lived about thirty miles from New Mexico in Texas; he saw Bailey and appellant with the horses; that they had a bunch of horses and claimed to have raised them; also that they said they had traded cattle for the ponies and the horses. Other witnesses testified that Bryan and Bailey were together with the horses in Donley County, but they do not show any distinct claim by Bailey to the ownership of the horses. These witnesses place appellant in the attitude of doing most of the talking and setting up claim to the possession. Bailey took sick in Donley County, left and went to Amarillo. These facts are not sufficient, in our opinion, to show that Bailey committed the theft and that appellant received them from Bailey in New Mexico. Bailey was not in charge of the horses and was not seen in possession of the horses, and the statement of appellant that connected Bailey with the horses in any way in New Mexico was not sufficient to show that he committed theft of the horses in New Mexico. It was much more cogent to show that appellant took them. Before appellant could be convicted of receiving stolen property in New Mexico from Bailey, who was charged with committing the theft, the evidence must show beyond a reasonable doubt that Bailey did the stealing and that appellant received them from him thereafter, knowing the fact that they were stolen. Bailey was not even seen in possession, or exercising control, of the horses in New Mexico, and the State having placed appellant's declarations in evidence, which showed that, as between Bailey and

himself, he, appellant, had committed the theft and employed Bailey to assist him in driving them, was bound by it, unless the prosecution could in some way disprove it. If Bailey had been on trial for theft, this evidence would have been insufficient to convict him. Perhaps, the subsequent acts of Bailey in Texas in connection with appellant would have afforded stronger reasons, viewed from the standpoint of circumstances, but the particular point here is that Bailey must be shown to have stolen the horses in New Mexico and that appellant, in that Territory received them, knowing the fact they were stolen. On the contrary the testimony introduced by the State, which was the statements of appellant, had the effect of showing that the appellant claimed ownership of the horses, was in possession of and driving them and Bailey was not, and the further statement was introduced which would seem to be binding upon the State, unless disproved, that Bailey was simply appellant's hired hand. Of course, the State might prove that they committed the theft together in New Mexico, but that would defeat this prosecution because it was necessary here for Bailey to commit the theft and appellant receive the stolen property from him in order to sustain the count in the indictment under which the prosecution was had. If Bryan stole the horses in New Mexico, he could not be convicted for receiving them from Bailey as he was not prosecuted for theft. We have been unable to find any evidence in the record which showed that Bailey had possession of the horses prior to Bryan's possession and the statement of appellant excludes Bailey's prior possession. If this is true, certainly it can not be said that Bryan received the horses from Bailey.

4. It is contended that the court's charge is error in not submitting affirmatively: First, if the jury should find that the horses were not stolen by Bailey, to acquit. Second, that if they believed that appellant had bought the horses in good faith, to acquit. Third, that before appellant could be convicted, the State must show beyond a reasonable doubt that the horses were received by appellant or came into his possession in New Mexico. These issues were clearly raised by the evidence and the court failed to charge on them. As before stated, the evidence introduced tended very strongly to show that Bailey did not steal the horses. The State introduced appellant's statement when first seen with the horses, that he acquired possession of them by selling cattle and buying them and that Bailey was his hired hand. It may be doubted that there was sufficient testimony showing definitely that appellant was in possession of the Elliott horses in New Mexico. The witness Clark saw him with horses but did not identify them as the horses that Elliott had lost unless it was the dun horse mentioned by the witness Clark. The State also introduced testimony of appellant on his previous trial in which he stated that his first connection with the Elliott horses was in Deaf Smith County. This raised the issue of his reception of the horses in Deaf Smith County, in Texas, and tended to countervail the allegation in the indictment that he received

them in New Mexico and afterward brought them to Deaf Smith County. If for the first time he had possession of the stolen horses in Deaf Smith County, he could not be guilty of receiving them in New Mexico and bringing them to Texas. We have treated this case simply from the standpoint of the count submitted to the jury, to wit; that Bailey committed the theft of the horses in New Mexico and appellant received them in that territory from Bailey, knowing they were stolen and thereafter brought them into Deaf Smith County, in Texas.

As the case is presented by the record, we believe the suggestions of appellant are well taken and for which the judgment is reversed and the cause remanded.

*Reversed and remanded.*