## Ozay Boatright v. The State.

No. 14984.  Delivered April 13, 1932.
Rehearing Denied June 22, 1932.
Reported in 51 S. W. (2d) 311.

The opinion states the case.

*J. J. Collins* and *R. W. Fairchild,* both of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

580

LATTIMORE, JUDGE.—Conviction for theft; punishment, five years in the penitentiary.

Mr. McCardell was manager of a store which appears to have been the property of nonresidents, and as such manager McCardell had the care, management, and control of the property located in the various rooms which made up the store building. In his absence the assistant manager, a Mr. Phillips, had charge. The alleged theft took place about 2:30 a. m. on Monday night, October 14, 1929. McCardell had been in Houston, but returned to Camden, where the store was located, about 9 o'clock Monday night. The night watchman testified that in making his rounds about 2:30 a. m. he observed a light in the store, and went to investigate. When he entered the building, he observed two negroes, and saw them run. He observed the cap and clothing of one of them, and identified appellant when he was brought back to the store about 4 a. m. that morning. It was shown that from various departments of said store merchandise aggregating in value something over $500 had been piled up in the warehouse room of said store where it was found and listed by the employees in said store. Asportation was sufficiently shown.

After being arrested and warned, appellant made a written confession admitting that he was in said store at the time in question, and that he had piled up goods in the warehouse room preparatory to their removal in a car belonging to a confederate, appellant stating in his confession that he had piled up about $40 worth of the goods at said place. He further stated that he was in the store on the day in question and purposely left a door in same unlocked, that he and another negro went back to the store that night for the purpose of stealing the property, and that they would have removed it but for being run off by the nightwatchman. Appellant did not testify, nor was there any evidence introduced in his behalf raising any question as to the voluntary character of his confession, or of the fact that he entered the building for the purpose of stealing the property which was removed from its accustomed place and piled up in the warehouse room. The facts above stated appear without dispute in testimony.

Appellant requested fourteen special charges, one asking a peremptory charge to acquit; nine seeking to have submitted to the jury the voluntary character of the confession and the guilt of appellant predicated thereon; three trying to have the jury told that they could not convict upon the confession of appellant unless corroborated, and one or two upon the question of the ownership and possession of the alleged stolen property, apparently on the assumption that, because Phillips closed the doors of the store when he left that afternoon, the property would not be that of McCardell who came back to town before it was stolen.

Complaint of the refusal of some of these special charges is discussed in appellant's brief. Without dealing with them individually or at length, we think it enough to say that, McCardell being manager of the

store and in possession of the property therein when in town, having returned to said town and being there at the time of the theft, it was proper to allege in the indictment that he was the owner of the property, and to support it by proof of his presence in town, and there being nothing controverting such facts, no issue would be necessary of submission to the jury regarding such ownership or possession.

So also we find in the record, in addition to appellant's confession, that the nightwatchman identified appellant as being in the building at the time he went there at 2:30 a. m., and that appellant ran away. Further the evidence showed that appellant wore tennis shoes with rubber soles when at the store the afternoon before the theft; that, when he was brought back to the store after the theft was discovered, his knees and legs down to his feet were muddy with black mud, and that deep tracks were found in the soft black mud near the store, which appeared to have been made by some one wearing a rubber soled tennis shoe. The rule in this state is that, if the offense be proven aliunde, the confession of the accused is sufficient to convict. Attaway v. State, 35 Texas Crim. Rep., 403, 34 S. W., 112; Duncan v. State, 109 Texas Crim. Rep., 668, 7 S. W. (2d) 79. If the facts in this case, aside from the confession, showed a theft, appellant's confession would therefore he sufficient, but, if the law required corroboration in such case, it appears abundantly in this record, and there was no necessity for giving those special charges seeking to have the jury told that they could not convict unless there was corroborating evidence.

In regard to appellant's confession, and his effort to have the voluntary character thereof submitted, there was not a particle of testimony controverting the state's proof that proper warning was given, or raising any issue as to the voluntary character of such confession. In such case there existed no reason for submitting the issue of such voluntary character to the jury, and the special charges so requesting were properly refused. Thompson v. State, 90 Texas Crim. Rep., 15, 234 S. W., 401; Crowley v. State, 92 Texas Crim. Rep., 103, 242 S. W., 472; Johnson v. State, 97 Texas Crim. Rep., 658, 263 S. W., 924; Harden v. State, 85 Texas Crim. Rep., 224, 211 S. W., 233, 4 A. L. R., 1308. The question of the legality of the manner of selecting the jury was settled adversely to appellant's contention in Randolph v. State, 117 Texas Crim. Rep., 80, 36 S. W. (2d) 484.

Appellant excepted to the charge of the court for many reasons, each of which exceptions has been carefully examined and the charge scrutinized in the light of such exceptions. We are of opinion that the charge was an admirable presentation of the law applicable, and that it was not subject to any of the criticisms leveled at same.

The bill of exception complaining of the action of the court in taking this case up out of its numerical order and putting it to trial before other

cases against this accused, recites that the court heard evidence on the point involved. We find no evidence brought forward by the bill of exception or in any other way. In such case we must uphold the action of the court. In addition we find a qualification upon this bill of exception which makes apparent the correctness of the court's action. We are not able to agree to the soundness of the views set forth in appellant's able brief.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—Appellant insists that we were in error in holding that there was no variance between the proof and the allegation in the indictment as to ownership. The allegation in the indictment is that the property was taken from the possession of J. D. McCardell. Appellant maintains in the first place that the proof shows that the property was taken from the possession of Willoughby Gibbs, the night watchman. In the second place, he asserts that, if the property was not taken from the possession of Willoughby Gibbs, then the proof shows it was taken from the possession of L. M.. Phillips. The store from which the property was taken belonged to W. T. Carter & Brother, copartnership. J. D. McCardell, in whom possession was alleged, was employed as general manager of the store. He had no interest in the business, but received a salary for running the business in the capacity of general manager. L. M. Phillips was assistant manager. In the absence of Mr. McCardell, Mr. Phillips had charge of the store and the merchandise therein. W. T. Carter & Brother also owned a mill, which was in the same vicinity as the store. Willoughby Gibbs was employed as night watchman, his duties being to watch the mill and the store at night. He went on duty at 6 o'clock in the evening and worked until 6 o'clock in the morning. There was a clock on the front of the store which the night watchman punched each hour in making his rounds over the property belonging to W. T. Carter & Brother. The theft was committed on the 15th day of October, 1929, at 2 o'clock in the morning. It appears that the night watchman, in making his rounds at the hour mentioned, saw some one in the store. He had the key to the door, and went back for the purpose of entering to see who was there. It appears that the door was loose. As the night watchman entered the building, he saw a man run from behind the counter. This man got away. Another man was also discovered in the store. He also escaped. On the morning of October 14, 1929, Mr. McCardell, the alleged owner of the property, had gone to Houston, leaving L. M. Phillips in charge of the store. Mr. McCardell reached home from Houston about 9 o'clock in the evening of October 14, 1929, but did not go to the store. About 2:30 a. m. October

15, 1929, he was called to the store and observed that part of his property had been stolen. Mr. Phillips closed the store on October 14, 1929, at 6 o'clock p. m. He testified that he was in charge of the store during the time that Mr. McCardell was away, but that Mr. McCardell was general manager, and he (Phillips) was responsible to him. The night watchman testified that he considered that he had possession of the store and stock during the time he was on duty at night, saying that he was responsible for the safe-keeping of the property, and that it was his duty to see that none of the property of W. T. Carter & Brother "was broken into." He said: "My duties required me to as far as possible to prevent any depredations or theft of the company property."

The opinion is expressed that the facts hereinbefore stated show that Mr. Gibbs, as night watchman, was a mere custodian of the property. Branch's Annotated Penal Code, sec. 2447, and authorities cited; Emerson v. State (Texas Crim. App.), 25 S. W., 289; King v. State (Texas Crim. App.), 100 S. W., 387; Bryan v. State, 54 Texas Crim. Rep., 59, 111 S. W., 1035; Russell v. State, 55 Texas Crim. Rep., 330, 116 S. W., 573; Staha v. State, 69 Texas Crim. Rep., 356, 151 S. W., 543. As said in the case of Bailey v. State, 18 Texas App., 427: "Possession and custody are not * * * controvertible terms, under the Code; and if property at the time it is taken be in the mere temporary custody of a ward, servant or other person, the indictment need not allege the possession to be in such temporary custodian." Of course, if the night watchman had had the actual control, care and management of the property, a different question would be presented. In his Annotated Penal Code, in sec. 2447, Mr. Branch states the rule as folows: "If the employee, servant or person in charge of the property at the time of the taking had more than the mere custody thereof and had the actual control, care and management of the property at the time not under the immediate supervision of the general owner, possession must be alleged in such employee, servant or person having such possession."

In support of the text, many authorities are cited, among them being Frazier v. State, 18 Texas App., 434. See, also, Emerson v. State, supra. Both Phillips and McCardell were in the town where the store was situated at the time the theft was committed. Under the undisputed evidence, McCardell, as general store manager, had the actual control, care, and management of the property when he was in town. It was only when he was absent that Phillips was in charge. We think it is clear that the allegation that the property was taken from the possession of McCardell was supported by the proof. The issue not being raised, the court was warranted in refusing to instruct the jury to acquit appellant, unless they found the property was taken from the possession of McCardell.

Appellant contends that the charge of the court was erroneous in

that part thereof where the law of theft was applied to the facts in that the court failed to instruct the jury that they must find from the evidence that the property was taken without the consent of McCardell. The court instructed the jury, in defining theft, that want of consent of the owner was an essential ingredient of theft. In applying the law to the facts, the element of consent was omitted. We find nothing in the exceptions to the court's charge sufficient to call the omission to the attention of the trial judge. The exception to which appellant directs our attention is as follows:

"Because said charge is in violation of the statutes and is an improper application of the law to the facts of this case and does not correctly present the law of asportation as relates to theft and is upon the weight of the evidence and invades the province of the jury and in fact tells the jury to convict the accused in this cause; that said charge is highly prejudicial and calculated to mislead and confuse the minds of the jury and the same should be striken from the court's main charge or so reformed as to correctly present the law applicable to the case. The foregoing instruction is further erroneous for the reason that it assumes that the defendant did move the goods involved herein from one place to another inside the store and assumes that in so doing he did it with the intent to commit theft. The above instruction is further erroneous in that it refers to the accused as a 'thief,' when that fact is an ultimate fact to be determined by the jury, and the accused should not be called a thief until he has been convicted of such offense, and the court should so frame his charge as to eliminate such inflammatory and prejudicial language, and defendant now requests the court to accordingly do so. And further because said charge fails to properly present the law of reasonable doubt in connection with said charge."

There is nothing in the foregoing exception calling the attention of the trial court to the omission in question; otherwise, it would doubtless have been corrected. Article 658, C. C. P., provides that, before the charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine same and that objections thereto shall be presented in writing, distinctly specifying each ground of objection. Article 666, C. C. P., provides that all objections to the charge and to the refusal or modification of special charges shall be made at the time of the trial. When there is no exception to the charge, this court cannot grant relief, unless the error is fundamental. Goodwin v. State (Texas Crim. App.), 38 S. W. (2d) 806.

Appellant insists that we were in error in holding that there was no testimony raising any issue as to the voluntary character of the confession. Appellant did not testify. Appellant's contention is that the testimony of the county attorney raised the issue he sought to have submitted to the jury. That part of the testimony which it is insisted raises the issue is

set out in the motion for rehearing as follows: "You ask me to refresh my memory and ask me if it is not a fact that the defendant's bond was furnished on that day and that it had been approved by the sheriff of the county and they were fixing then to release him from prison and that he came by there and I insisted on him making a statement before he was released. Well, I could be wrong, but I think it was Houston Randolph that got out. * * *"

We think it is clear that the county attorney was not testifying that he insisted on appellant making a statement before he was released on bond. He merely stated that he thought it was Houston Randolph who was released, but that he could be wrong about that. We are unable to reach the conclusion that this testimony raised any issue as to the voluntary character of the confession. The trial court is not required to submit the voluntary character of a confession as an issue to the jury unless there be testimony raising the question as to whether same was voluntary or not. Johnson v. State, 97 Texas Crim. Rep., 658, 263 S. W., 924.

The motion for rehearing is overruled.

*Overruled.*

Reference

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.