BERT JONES v. THE STATE.

No. 5785.    Decided April 14, 1920.

Rehearing granted March 16, 1921.

1.—Burglary—Circumstantial Evidence—Recent Possession—Sufficiency of the Evidence.

Where, upon trial of burglary the evidence showed, although circumstantial, that defendant was found in possession of the property recently stolen and gave no explanation, etc., there was no reversible error on that ground.

2.—Same—Argument of Counsel—Practice on Appeal.

Where, upon trial of burglary and a conviction of that offense, the argument of State's counsel to which objection was raised was in response to that of defendant's counsel, there was no reversible error.

3.—Same—Evidence—Argument of Counsel—Practice on Appeal.

Where the bill of exceptions showed that the prosecuting officer used the following language: "Officer Brown knew Bert before this—and I guess he did know him," and the record showed that the officer testified that he knew the defendant and saw him go into said pawn shop with the clothes, etc., there was no reversible error.

4.—Same—Argument of Counsel—Practice on Appeal.

Where the remarks of the State's counsel objected to by the defendant was a legitimate deduction from the evidence, there was no reversible error.

5.—Same—Bills of Exception—Practice in Trial Court—Rehearing—By-standers Bill.

The rule is that the defendant cannot resort to a by-stander's bill until after the trial judge has filed his own bill in lieu of the one refused by him for the defendant, and where counsel for defendant took the bills of exception refused by the judge and filed them with the clerk, although he was not directed by the trial judge to do so, they could not be considered on appeal, but the trial judge is not authorized, on the other hand, to place qualifications on said bills of exception and refile them unless defendant has assented and agreed that same shall be done, which he did not do, and the judgment must be reversed and the cause remanded.

6.—Same—Practice on Appeal—Bills of Exception.

Of course, if this court could say, without qualification, that no error was shown by the practice pursued in the trial court with reference to filing of bills of exception received by the court, etc., no harm could come to appellant, on a refusal to reverse the instant case, but when the qualifications by the court are eliminated, this court must have doubt in affirming the judgment below, and not being able to consider the bills of exception, a reversal must follow.

Appeal from the Criminal District Court of Tarrant. Tried below before the Honorable George E. Hosey.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Mays & Mays,* for appellant.—On question of argument of counsel: Anglin v. State, 47 Texas Crim. Rep., 110; Martinez v. State, 48 id., 33; Vaden v. State, 52 id., 301.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—Cited Blain v. State, 31 S. W. Rep., 368; Slatter v. State, 136 id., 770.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burglary and given two years in the penitentiary.

The case is one of circumstantial evidence. The office of Dr. Withers was burglarized between five and nine o'clock on the evening of the 15th of August. A suit of clothes and a lot of drugs were taken. There seems to be no question of the fact that the office was entered and that these things were taken. This was in Fort Worth, in Tarrant County. The next morning about 8 or 8:30 o'clock, in Ardmore, Oklahoma, appellant pawned the suit of clothes to a witness named

Yaffe. He made no statement as to his possession of the goods; simply pawned them and got the money, and was immediately arrested by an officer at Ardmore who had been watching him for some time prior to his pawning these goods at Yaffe's. The details of this officer's testimony would be of no practical value, but it shows he did shadow appellant around town until he finally disposed of the goods. Appellant made no explanation and offered no testimony. So we have a case of burglary supported by circumstantial evidence with the accused in possession of the property within a few hours after the burglary was committed in an adjoining State. The evidence indicates that he could and doubtless did go upon a train that left Fort Worth about midnight, reaching Ardmore early the next morning. Convictions upon circumstantial evidence of this sort have been sustained by this court in quite a number of cases.

Bill of exceptions No. 1 recites that the assistant county attorney used this language in his argument to the jury: "He (meaning defendant) has not put on any testimony or evidence to show that he is not guilty." The bill recites that was not in answer to argument made by counsel for appellant. The objection was that it was an allusion to defendant's failure to testify on the trial. The court signs this bill with the statement that "no such language was used." The bill as thus qualified was accepted and filed. If the language was not used, then the exception will be of no value. There was no attempt to show the qualification of the judge was not correct, no bill by by-standers, and no attack made on the bill of exceptions as given.

Another bill recites that the prosecuting officer used this language: "I do not know whether the defendant is an addict. He may not have wanted to sell the drugs in question." It is recited in the bill that there had been no testimony in the record or otherwise as to whether appellant had ever been addicted to the use of narcotics, and no testimony adduced in support of that theory, and no testimony that any of the articles stolen were narcotics. This bill is signed by the judge and thus qualified: "Said above mentioned language was used by State's counsel after counsel for defendant had stated in his argument to the jury that the defendant couldn't have sold the drugs that were taken from the place burglarized and that said defendant's counsel asked said jury in his argument this question: 'What in the name of God would Bert have wanted with the drugs?' Said statement of defendant's counsel to the effect that defendant could not have sold said drugs, not being supported by the evidence and being out of the record; and defendant presented no written instruction to the court requesting that said argument should not be by them considered." We are of opinion that under the qualification given by the judge there was no error shown by the language imputed to the assistant county attorney. Counsel had asked the question: "What in the name of God would Bert have wanted with the drugs," which was a matter put to the jury for their consideration. To this State's counsel it seems replied he

did not know whether defendant was an addict and may not have wanted to sell the drugs. We are of opinion that this comment, in view of the way the matter was presented, would not require a reversal of the judgment. The argument of counsel for appellant we think opened the way for the statement of the county attorney.

Another bill recites that the prosecuting officer used this language: "Officer Brown knew Bert (the defendant) before this—and I guess he—did know him." Various objections were urged to this. The court signs the bill with the statement that "There was a sharp controversy in the testimony and argument as to whether the defendant was the man who pawned the clothes in a pawn shop in Ardmore; the said officer Brown had testified that he knew the defendant and saw him go into said pawn shop with the clothes, and the defendant's contention was that it was not defendant who pawned said clothes at said place and defendant presented no written instruction to the court requesting that same should not be considered by the jury." A reference to the facts would show that officer Brown at Ardmore knew defendant and had known him for some months, and that he shadowed him with a view of arresting him; that he discovered he had a suit of clothes with him, and saw him go in the pawn shop with the clothes and come out without them, and immediately went in and got the suit of clothes. We are of opinion there is no error shown in this matter.

Objection was urged to the following remark of the prosecuting officer: "Bert (meaning defendant) signed this pawn ticket—this false name to this pawn ticket." This bill is qualified by the judge as follows: "Said above mentioned argument was a legitimate conclusion drawn from the evidence: the evidence circumstantially showed that defendant signed said ticket and that defendant presented no written instruction to the court charging the jury that same should not be considered by them." We are of opinion that the remark of the assistant county attorney was a legitimate deduction from the testimony.

Another bill recites this language was used by the assistant county attorney: "Bert (meaning defendant) should put some witness on the stand to tell you what happened up there." The court qualifies this with the statement that "no such language was used," and as thus qualified was accepted by defendant and filed as a part of the record. We are of opinion that these bills do not present such error as would require a reversal of the judgment, and we are further of opinion that the evidence, though circumstantial, sufficiently shows that appellant was the party who entered Dr. Withers' office and took the suit of clothes, and that he pawned them in Ardmore on the following morning.

The judgment will be affirmed.

*Affirmed.*

HAWKINS, Judge.—On April 14, 1920 the judgment in this case was affirmed in an opinion by the late Presiding Judge Davidson. A reference to that opinion will show that the bills of exceptions presented by appellant were qualified in various ways by the trial judge, and in writing the affirming opinion this court relied upon the qualifications to the bills of exceptions and held that as so qualified no error was presented in the record. It will be seen also that many of these bills of exceptions were to arguments made by counsel for the State in which the judge qualified the bills by stating that no such language as complained of was used. After that opinion was handed down, counsel for appellant on April 26 filed a motion for rehearing, supported by his own affidavit in which he substantially sets out: That the bills of exceptions prepared by him were submitted to the trial judge and by him to counsel for the State, and were tendered back to him with certain qualifications and explanations attached thereto; that he notified the trial judge that he could not accept the bills as thus qualified and explained, and requested that he mark them "refused," whereupon said trial judge cancelled said qualifications and explanations, some of them by drawing pencil marks and others by ink marks through qualifications, and then marked the bills "refused," over his, the judge's, signature, and returned them to counsel for appellant. Counsel for appellant further says in his affidavit that he carried these bills of exceptions so marked "refused" by the trial judge and filed them with the Clerk, excepting the trial judge to file his own bills of exceptions in lieu thereof, in which event he intended to resort to bystander's bills to prove his contention in the event he did not agree with the bills which he expected the judge to prepare; and that in the event the judge did not prepare bills of his own, he expected to rely upon the bills filed by him as "refused bills." He further says in his affidavit that he learned by telephone conversation with the clerk late in the afternoon of the last day for filing bills, that no bills had been prepared and filed by the judge in lieu of the ones refused by him, and that he did not know that the bills so filed by him with the clerk had ever been changed until after the judgment of affirmance was reported from this court. He attached to this motion for rehearing photographic copies of the original bills of exceptions on file in the trial court. In order that we might act intelligently upon the matter we have caused the original bills of exceptions to be forwarded to this court by the clerk of the trial court and upon examination of those original bills we find the qualifications not to be in the handwriting of the judge, but they seem to be suggestions as to qualifications by one of the prosecuting officers, which suggestions were adopted by the trial judge as his qualifications. We find also, from an inspection of these bills

that some of them show pencil marks through the qualifications, which pencil marks seem to have been practically erased, and those where the qualifications were marked out in ink bear now the same qualifications written in above the signature of the trial judge. All of these bills show the word "refused" immediately over the signature of the trial judge, but they are now all cancelled by having lines in ink drawn through the word "refused." We also have an affidavit from the trial judge, in substance, that when these bills of exceptions were presented to him he called in the attorney for appellant and indicated what qualifications he thought ought to be attached to the bills and that counsel declined to accept these qualifications and asked him to mark the bills "refused," which he did and handed them to counsel, telling him that it would be necessary for him, the judge, to file bills in lieu thereof. He further states that he began the preparation of his bills but learned that the original bills of exceptions were in the clerk's office with the file mark on them, that he felt counsel for appellant had done wrong by taking said bills in the clerk's office, that he had the clerk bring him the bills of exceptions, but that the file mark was indistinct, the date being unreadable; that he, the judge, then caused the qualifications to remain or be placed on the bills of exceptions as they were at the time he talked to counsel for appellant and had the clerk re-file them under date of January 2, 1920.

Such being the condition of the record with reference to the bills of exceptions, what is the duty of this court as to whether they should or should not be considered? The only article with reference to bills of exceptions in our C. C. P. is Article 744. "On the trial of any criminal action the defendant by himself or counsel may tender his bills of exceptions to any decision, opinion, order or charge of the court or other proceeding in the case; and the judge shall sign such bills of exceptions *under the rules prescribed in civil suits* in order that such decision, order or charge may be revised on appeal." When we look to the civil statutes as suggested in Article 744, we find the following provisions. Vernon-Sayles' Civil Statutes, Article 2063. "It shall be the duty of the party taking any bill of exceptions to reduce the same to writing, and present the same to the judge for his allowance and signature." Article 2064; "It shall be the duty of the judge to submit such bill of exceptions to the adverse party or his counsel, if in attendance on the court, and if the same is found to be correct, it shall be signed by the judge without delay and filed with the clerk." Article 2065; "Should the judge find such bill of exceptions to be incorrect, he shall suggest to the party, or his counsel who drew it, such correctness as he may deem necessary therein; and *if they are agreed to,* he shall make such corrections and sign the same and file it with the clerk." Article 2066; "Should the party not agree to such corrections, the judge shall return the bills of exceptions to him with his refusal indorsed thereon, and shall make out and file with the clerk such bills of exceptions as will in his opinion present the ruling

in that behalf as it actually occurred." Article 2067; "Should the party be dissatisfied with the bill of exceptions filed by the judge as provided in preceding articles, he may upon procuring the signatures of three respectable bystanders, citizens of this State, attesting the correctness of the bill of exceptions as presented by him, have the same filed as a part of the record of the cause," etc. The other portions of this article are not quoted, not being necessary for the purpose here desired. It will be seen from an examination of the Articles heretofore quoted that an appellant can not resort to bystander's bill until after the trial judge has filed his own bill in lieu of the one refused by him; the reason for this is apparent, because the presumption is that if counsel for appellant has made a mistake in the preparation of his bill the judge will prepare a correct bill with which the appellant would likely be satisfied, and it would, therefore, not be necessary to resort to a bystander's bill. Some confusion has arisen in the practice by reason of certain expressions from this court as to the effect to be given to bills marked "refused" by the trial judge but still found in the record on appeal. We apprehend that it was because of those expressions that counsel stated in his affidavit that he expected to rely upon the bills filed by him with the clerk as "refused bills" in the event the trial judge did not file bills of his own. An examination of many authorities indicates that where refused bills have been considered by this court it is where the record either shows affirmatively that the bills were refused by the trial judge and then filed by the clerk under his instruction, or where the record is silent with reference to the matter, and this court presumed that the clerk would not have filed a bill of exceptions marked "refused" unless by order of the judge. That does not appear to be the condition in this case. Counsel for appellant says himself in his affidavit that after these bills of exceptions were marked "refused" he took them to the clerk and had the file mark put on them. This he had no right to do and the clerk should not have accepted them for filing with the refusal of the judge indorsed on them unless he was directed to file them by the judge himself; but if the bills were so filed after counsel for appellant had refused to accept them with the qualifications that the judge had indicated, then on the other hand, the judge ought not to have placed the qualifications on the bills and re-filed them unless appellant consented and agreed that the same should be done. So this court finds itself in a position where it can not consider the bills of exceptions from either angle. If they are bills refused by the trial judge and not filed by the clerk under his direction they have no place in this record at all. If they are bills of exceptions qualified by the trial judge with counsel declining to accept them with such qualifications, and receiving them back from the judge with the qualifications cancelled, and the "refusal" marked on the bills, then no subsequent change could revive the qualifications without the consent of appellant or his counsel and, therefore, the bills can not be considered by this court as qualified

bills. In many cases it will be found this court has held that where bills of exceptions appear in the record marked "refused" that they will either be considered by this court, or they will be treated as though appellant had been denied his bills, but as before stated, we think in most, if not all of such cases, such refused bills were directed to be filed by the judge himself, or this court· would so presume from the circumstances. Exon v. State, 33 Texas Crim. Rep., 461; Rosa v. State, 86 Texas Crim. Rep., 646, 218 S. W. Rep., 1056; Thomas v. State, 83 Texas Crim. Rep., 325, 204 S. W. Rep., 999.

Where appellant's bills are refused, and returned to him or his counsel he ought not to file, or attempt to file, them with the clerk; but he has a right to rely upon the judge preparing proper bills in lieu thereof, and if the judge neglects to do this, thus depriving appellant of his resort to by-standers, he would not be deprived of his rights: for on a proper showing to this court by affidavits he would either be permitted time to have by-stander's bills prepared, or the court would treat it as an instance where he was denied his bills, and for that reason order a reversal of the case.

Of course, the bills of exceptions as originally prepared by counsel for appellant are before us in this record, and if we could say that as so presented, without qualifications, no error was shown, no harm could come to appellant from a refusal to reverse this case, but when we examine the bills of exceptions with the qualifications eliminated they at least present questions which would make it doubtful as to the action of this court in affirming the case, and this position is strengthened by the reason given by Judge Davidson at the time he wrote the judgment of affirmance, relying upon the qualification of the trial judge. We have reached the conclusion that, under the circumstances, the bills of exceptions can not be considered by us, and it will be treated as though appellant was denied his bills of exceptions in the lower court, and the judgment of affirmance will be set aside, the motion for rehearing granted, and the cause reversed and remanded.

*Reversed and remanded.*