### Herbert Osborne v. The State.

#### No. 6649. Decided December 6, 1922.

#### 1.—Theft—Indictment—Consent—Corporation—Agent.

Where, upon trial of theft, the sufficiency of the indictment was assailed upon the ground that it failed to negative the consent of the corporation named therein to the taking of the property, but the indictment alleged a want of consent of an agent of the corporation, in possession, naming him, the same was sufficient.

#### 2.—Same—Motion in Arrest of Judgment—Practice in Trial Court.

. Where the motion to quash deals with matters of substance in the indictment, a failure to file a motion in arrest of judgment is not absolutely error, and the defect in the indictment is available on appeal without motion in arrest of judgment. Following White v. State, 211 S. W. Rep., and other cases.

**3.—Ownership—Possession—Rule Stated—Ownership—Corporation.**

Where ownership is alleged in one person and possession in another, the want of consent of both ordinarily should be averred and proved, but in the instant case, where the ownership of the property was alleged to be in a corporation and it was further averred that the said property was taken from the possession of one (naming him) holding the same for the corporation, the same was sufficient and want of consent by said agent was sufficient. Following White v. State, 24 Texas Crim. Rep., 221, and other cases.

**4.—Same—Indictment—Theft—Ownership—Want of Consent.**

Where the indictment alleged the ownership in the incorporated company, and averred that the property was held by a natural person, naming him, and that it was taken without his consent, this was tantamount to an averment that the property was taken without the consent of the corporation, without a direct allegation to that effect. Following Thurmond v. State, 30 Texas Crim. Rep., 539.

**5.—Same—Continuance—Material Testimony—Good Faith.**

Where, in the light of the record on appeal, it was shown that the testimony of both the alleged absent witnesses was material, showing good faith of defendant as to the ownership of the property, the continuance should have been granted.

**6.—Same—Charge of Court—Words and Phrases—Additional Charge.**

Where the point of division among the members of the jury was as to the meaning of the word "charge," as contained in the instructions given to the jury, with reference to the penalty, and it appeared from the record on appeal that when the jury called for further instructions they were not brought into court and notice given to the attorneys of the defendant, etc., and the procedure was not in consonance with the letter and spirit of the statute, and that moreover the trial judge entered the room in which the jury was engaged in their deliberation for the purpose of discussing the charge, the same was reversible error.

Appeal from the District Court of Rusk. Tried below before the Honorable Charles L. Brachfield.

Appeal from a conviction of felony theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Futch and Tipps* and *J. W. McDaniel,* for appellant. Cited cases in opinion.

*W. A. Keeling,* Attorney General, and *C. L. Stone,* Assistant Attorney General, for the State.—On question of ownership:: Bonner v. State, 128 id., 1102; Williams v. State, 57 id., 93, and cases cited in opinion.

MORROW, PRESIDING JUDGE.—Conviction is for theft; punishment fixed at confinement in the penitentiary for a period of two years.

The indictment contains this averment:

" . . . the same then and there being the corporeal personal property of and belonging to The Farmers Warehouse Company, the said The Farmers Ware House Company, then and there being a corpora-

tion duly chartered and incorporated under the laws of the State of Texas, from the possession of Ed Mansinger and Homer Duran, who were holding the said four bales of lint cotton for the said The Farmers Warehouse Company, without the consent of the said Ed Mansinger and the said Homer Duren or either of them, with the intent then and there to deprive the said The Farmers Warehouse Company of the value thereof, etc."

The sufficiency of the indictment is assailed by the appellant upon the ground that it fails to negative the consent of The Farmers Warehouse Company to the taking of the property.

In the instant case there was no motion in arrest of judgment made, but if the fault be one of substance, it was available on appeal without the motion in arrest of judgment. Such a motion deals with matters of substance only. See Melley v. State (No. 7185) not yet reported; Code of Crim. Procedure, Art. 875. Such defects may be taken advantage of after judgment, either in the trial court or on appeal. White v. State, 1 Texas Crim. App. 211; Holden v. State, 1 Texas Crim. App. 234; Maddox v. State, 14 Texas Crim. App. 447; Ryan v. State, 76 Texas Crim. Rep. 510, 176 S. W. Rep. 49. Where ownership is alleged in one person and possession in another, the want of consent of both ordinarily should be averred and proved. Bailey v. State, 18 Texas Crim. App. 427; Frazier v. State, 18 Texas Crim. App. 434; Atterberry v. State, 19 Texas Crim. App. 401'; Williams v. State, 19 Texas Crim. App. 277; Johnson v. State, 34 Texas Crim. Rep. 257. It is insisted, however, that under the averment in the indictment, the true owner being a corporation, the law touching the averment of want of consent was satisfied by the averment reading thus:

"  . . . from the possession of Ed Mansinger and Homer Duran, who were holding the said four bales of lint cotton for the said The Farmers Warehouse Company, without the consent of the said Ed Mansinger and the said Homer Duran or either of them, etc."

Supporting this proposition, reference is made by the State's counsel to White v. State, 24 Texas Crim. App. 231; Thurmond v. State, 30 Texas Crim. Rep. 539; Hays v. State, 90 Texas Crim. Rep. 498, 236 S. W. Rep. 482; Guyon v. State, 89 Texas Crim. Rep. 287, 230 S. W. Rep., 408.

By reason of our statutory definition of theft (Art. 1329, P. C.) embracing "ownership" and "possession," the construction thereof has often received the attention of our court. The most comprehensive general discussion, we think, is found in Frazier's case, 18 Texas Crim. App. 434. We quote therefrom, italicizing that portion which has special application to the question before us:

"With regard to property which may be the subject of theft, there is provided, under the statute, two kinds of ownership, viz: 1, a general, and 2, a special ownership, *both of which depend upon 'possession' alone so far as this offense is concerned. We will also see as*

*we proceed that really 'ownership' means nothing more than 'posses-sion,' and that ownership and possession are but synonymous or con-vertible terms under our statutes on the subject of theft.*

As defined in the Code, this 'possession' is of a two-fold character: 1, It may be in the actual owner, who is the general owner; or, 2, it may be in some person holding the property for the actual owner,— who is the special owner. It is not necessary that the possession and actual or general ownership should be in the same person at the time of 'the taking' to constitute theft. (Penal Code, Art. 728.) It is neces-sary, however, in the language of the statute, that the taking should be 'without his consent.' *Whose consent—the owners? Not necessa-rily, unless the actual owner was in 'possession' at the time of 'the tak-ing.' If he was not in possession at the time, then the terms 'without his consent' mean without the consent of the special owner—that is, the person in possession. 'Without his consent' refers specially to pos-session rather than ownership.* Now, who is the person in 'possession?' This is answered by the statute, which declares that 'Possession of the person so unlawfully deprived of property is constituted by the ex-ercise of actual control, care *or* management of the property, whether the same be lawful or not.' The use of the disjunctive 'or' in this provision of the statute has created no little of the trouble which has been experienced on this subject. Evidently the conjunction *'and'* was intended and should be used in its stead, in giving it proper construc-tion.'

Later, in the opinion, the following illustration is used:

"Suppose A, who is a non-resident, or resides in say Galveston county, is the actual owner of a stock of cattle or horses in Tom Green county or the Panhandle, which stock is under the actual control, care and management of B. One of the animals is stolen. The indictment should allege the ownership in B alone, and it is, so far as consent is concerned, only necessary to allege and prove *B's want of consent. Such allegation and proof fully makes out the State's case. If, under such circumstances, the accused has the consent of the real, actual or general owner, then it is his business to show it.* For, 'on the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts and circumstances on which he relies to excuse or justify the prohibited act or omission.' *The State was not bound to allege, neither was it bound to prove, the want of consent of the real owner."*

A corporation may, in its corporate name, hold title (ownership) to personal property which is the subject of theft. It is equally true that the "actual care, control and management" (the possession) thereof must of necessity be in some natural person, someone acting for the corporation. Therefore, the better rule of pleading in charging theft of such property is always to charge both ownership and possession in such natural person. In the instant case, the pleader alleges owner-ship in the corporation, but further avers that the property was held

for it by certain parties, thereby alleging what is a necessary corollary
to corporate ownership, that some natural person must be in actual
possession; the averment of the indictment informs us as to the
identity of these parties, and avers that the property was taken from
their possession without their consent. Having averred that they
were holding it for the corporation, and that it was taken from them
without their consent is tantamount to an averment that it was taken
without the corporation's consent (in so far as the law of theft is con-
cerned) without a direct allegation to that effect. As was said in
Frazier's case (supra): "If, under such circumstances, the accused
has the consent of the real, actual or general owner, then it is his busi-
ness to show it." So, in this case, whether the allegation be as we find
it, or whether ownership, as well as possession, should have been alleged
in the particular parties named, if appellant had the consent of some
other officer or agent of the corporation, he might have shown it in
justification of the taking. Thurmond v. State, 30 Texas Crim. Rep.,
539, is direct authority sustaining the indictment. We believe it lays
down a rule in consonance with common sense and is not antagonistic
to any rule of law when considered in connection with corporate owner-
ship and possession of personal property. This case is distinguished
from Swink v. State, (supra) and other cases cited, in that the in-
dictments therein do not disclose the real owner to have been a corpo-
ration.

The alleged stolen property was four bales of cotton. If we prop-
erly comprehend the evidence, the appellant sold five bales of cotton
to the witness Rettig. The cotton was in the yard of The Farmers
Warehouse Company. One bale was claimed by a man named Russeau.
Appellant arranged with Rettig to redeliver the bale which Russeau
claimed and it was put in the possession of Russeau.

In his testimony and in his motion for a continuance appellant claims
that the absent witness, Lesa Hampton, had agreed to place a bale
of cotton for the appellant in the yard mentioned; that the bale in
question was unmarked, and appellant believed it to be the bale which
Hampton had agreed to deliver. The other four bales sold by the
appellant to Rettig were claimed by the witnesses Mansinger and Duran
for The Farmers Warehouse Company. Appellant insists that, in fact,
the bales belonged to him and that they were put in possession of the
Farmers Warehouse Company after the controversy arose, upon the
assurance that they would be subsequently returned to him.

If we comprehend the application for a continuance, appellant ex-
pected to prove by Babe Hampton that one of these bales was hauled
by him and belonged to the appellant, and that by the absent witness
Tatum, appellant expected to prove his ownership of another one of the
four bales. As to the witness Tatum, the diligence is not sufficient.
The contrary appears to be true so far as the witness Lesa and Babe
Hampton are concerned. In the light of the record, as developed upon
the trial, the testimony of both of these absent witnesses was material.

The fact that the appellant claimed that he had made a mistake and sold Russeau's bale of cotton with the same lot of cotton upon which the prosecution is founded was a circumstance used against him on the trial challenging the good faith of his claim of ownership. Under these circumstances, the testimony of Lesa Hampton detailed above would have tended to support the appellant's theory, and the testimony of the witness Babe Hampton would have tended to show that the appellant was, in fact, the owner of one of the bales of cotton in controversy.

There was an issue of fact concerning the circumstances under which the appellant delivered to The Farmers Warehouse Company the four bales of cotton mentioned and the motive with which he did so; also as to the identity, that is, whether the four bales of cotton which he had put in possession of The Farmers Warehouse Company were the same as those which were charged to have been stolen. The court, in charging on the penalty, used these words:

"  .  .  .  and you further believe from the testimony that the defendant, before he knew that he was charged with the theft of the property and within a reasonable time after the taking, if there was a taking, voluntarily returned the property, then you will assess the punishment at a fine of not exceeding one thousand dollars."

It is to be noted that five bales of cotton were taken from The Farmers Warehouse Company by the appellant. They were all sold by him to Rettig, and according to his testimony, as soon as he learned from Lesa Hampton of his failure to comply with his promise, and became aware of the fact that he had made a mistake in assuming that the unmarked bale of cotton which he delivered to Rettig was not placed in the yard by Hampton for the appellant, he at once went to Rettig and repossessed himself of the cotton and returned it to Russeau. Touching the time that he delivered to The Farmers Warehouse Company the four bales of cotton the evidence is indefinite so far as we are able to discern, and such must have been the view of the trial judge when he instructed the jury in the language which has been quoted above.

In the motion for new trial, it was charged that the members of the jury were unanimous in their opinion that the appellant was guilty and were divided in proportion of five to seven upon the penalty; that the point of division was the meaning of the word "charge" as contained in the instruction given the jury which has been quoted above. Seven of the members of the jury insisted that by the word "charge" the court meant when the *prosecution* began. Five contended that it meant when he was accused of the theft in an informal way. To settle this controversy the jury requested the trial judge to come into the jury room; that he responded to this request and verbally explained to the jury that his meaning in the use of the word "charge" was correctly interpreted by the five jurymen mentioned. In support of the motion, the juror Lee, by affidavit, testified that the trial judge on his

visit to the jury at their request said that by the word "charge" he meant that the defendant was duly charged with the offense when he was accused of taking the cotton by the *"yardman,"* and that the word "charge" meant when accused, and not when the *legal prosecution* had been instituted. Two other jurors said that the judge told the jury that they had the charge before them and that it was for them to determine its meaning as the charge embraced the law governing the case, and could be interpreted by them as they wished. Each of these jurors testified to the controversy in substance as set out in the motion, and after their conversation with the judge, the seven receded from their contention that the punishment should have been by a fine and consented to the penitentiary punishment.

The following statement of the trial judge is embraced in the record:

"   .   .   . when the jury informed the court that they desired to propound a question, and the judge asked the defendants counsel, who was present, if he desired that the jury be brought out or would he agree that the judge should find out from them the question they desired to propound, which was agreed to by the attorney for defendant, a question was asked and the court informed them that the charge was as plain and intelligible as it could be written and he did not think it was necessary to further instruct them. The question asked was as to that part of the court's charge relating to the voluntary return of stolen property."

Touching the matter of additional charges, the statute, Art. 754, Code of Crim. Procedure, reads thus:

"The jury, after having retired, may ask further instruction of the judge touching any matter of law. For this purpose, the jury shall appear before the judge, in open court, in a body, and through their foreman shall state to the court, either verbally or in writing, the particular point of law upon which they desire further instruction; and the court shall give such instruction in writing, but no instruction shall be given, except upon the particular point on which it is asked."

Article 740, Code of Crim. Procedure, reads thus:

"No verbal charge shall be given in any case whatever, except in cases of misdemeanor, and then only by consent of the parties."

The precedents are uniform to the effect that when further instructions are desired by the jury, they shall be brought into court in a body and notice given to the appellant or his attorney; and in a felony case, in the presence of the accused, should be instructed alone upon the points requested, and the instructions must be in writing. When the subject-matter of the request is proper, the court has no option but to give the instruction; if the subject-matter is improper, the court shall so inform the jury in writing. Conn v. State, 11 Texas Crim. App., 391; see also Vernon's Texas Crim. Stat., Vol. 2, p. 567.

In Article 748, Code of Crim. Procedure, it is said;

"No person shall be permitted to be with a jury while they are deliberating upon a case, nor shall any person be permitted to converse

with a juror after he has been impaneled, except in the presence and by the permission of the court, or except in a case of misdemeanor where the jury may have been permitted by the court to separate; and in no case shall any person be permitted to converse with the juror about the case on trial."

It was said in a recent case:

"It. is a most delicate undertaking to have verbal communications with the jurors touching the case on trial after the retirement of the jury, and should be attempted only upon rare occasions and impelled by the soundest reasons, and too much caution can not be exercised in the effort to avoid impressing the jury with the idea that the court entertains any impressions of the case which he wishes them to know." (Lagrone v. State, 84 Texas Crim. Rep., 615.)

This observation we regard as being in consonance with the letter and spirit of the statutes to which we have adverted, and it may be added that in no event should the trial judge enter the room in which the jury is engaged in their deliberations for the purpose of discussing the charge or any phase of the case or permitting any of the members of the jury to do so. To the jury, not only the language of the judge trying the case but his manner is of peculiar weight, and they may place upon it interpretations not intended. The instant case is one of felony, and it is manifest that such conversation as took place between the judge and the members of the jury while he was in the jury room was not in the presence of the accused. Such statements as were made to the jury were verbal, a method of instruction which the statute forbids. The refusal to grant the application for a continuance requires a reversal of the judgment. The occurrence which has just been discussed, however well meant, we regard as offending against the statutory provisions to which attention has been directed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*