Charles Ray COMPTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 57195.

Court of Criminal Appeals of Texas, Panel No. 1.

April 25, 1979.

On Rehearing Oct. 8, 1980.

Rehearing Denied Nov. 19, 1980.

Kerry P. Fitzgerald, Dallas, for appellant.

Henry N. Wade, Dist. Atty., W. T. Westmoreland, Jr., Richard E. Zadina and Ron Poole, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and TOM G. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction of theft over $10,000.00. The jury assessed punishment at twelve (12) years' confinement in the Texas Department of Corrections.

Appellant urges reversal on seven grounds of error, but in view of our disposition of the case, only one ground will be discussed. In that ground of error, appellant contends that the evidence is insufficient to sustain the judgment because the State failed to prove that J. Howard Coonen was the owner of the property in question as alleged in the indictment.

Omitting the formal parts, the indictment reads in pertinent part as follows:

"... CHARLES RAY COMPTON ... did unlawfully, knowingly and intentionally exercise control over property other than real property, to–wit: $400,000.00 current money of the United States of America, of the value of at least $10,000.00, without the effective consent of *J. Howard Coonen, the owner thereof*, and with the intent to deprive the *said owner* of said property ...." (Emphasis supplied.)

Without presenting the extremely intricate details of this case, it suffices to say that the record reflects that in late March or early April of 1976, the appellant, doing business as National Trailer Sales, purchased a 1972 Diamond Reo truck from one Dan Thompson. Payment was to be made to Thompson as soon as appellant was able to re–sell the truck to someone else. This re–sale occurred on May 3, 1976, when, after negotiating with George Bushfield and Joe Bennett, two employees of the International Harvester (hereinafter referred to as International), Used Truck Center–Dallas office, appellant agreed to sell the truck to International for $11,650.00. The facts indicate that pursuant to this purchase agreement, International's Dallas office made a request for $11,650.00 from the home office in Atlanta, Georgia in order to purchase the truck. However, because of an error, the Atlanta office forwarded a check in the amount of $411,650.00. The check was signed by two officers of the Atlanta office and sent directly to the appellant, who presented the same to a bank. It appears from the record that J. Howard Coonen represented International in the capacity of manager for the Southwest Region, which included the Dallas office, and was in charge of disbursement of funds from the Dallas area. It is clear, however, that he at no time had any contact with the funds disbursed to the appellant from the Atlanta office. The record further reflects that the two employees of the Atlanta office who signed the check were in control of and jointly responsible for funds paid out of that office. Moreover, although Dallas and Atlanta were in different regions so far as "sales people" were concerned, the Atlanta office was in charge of "accounting" for the "Eastern part of the United States, including the Texas area."

When the property referred to in an indictment is the property of a corporation, it is not only permissible, but also better pleading practice to allege ownership in some natural person acting for the corporation. Article 21.08, V.A.C.C.P.; *Commons v. State*, 575 S.W.2d 518 (Tex.Cr.App.1978); *Eaton v. State*, 533 S.W.2d 33 (Tex.Cr.App. 1976); *Roberts v. State*, 513 S.W.2d 870 (Tex.Cr.App.1974). However, when specifying this natural person, it is equally important to satisfy the requirement of V.T.C.A., Penal Code, §§ 1.07(a)(24) and (28), which defines the terms "owner" and "possession" as follows:

" 'Owner' means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."

" 'Possession' means actual care, custody, control, or management."

In view of these definitions, there are three different ways provided in the statute by which the State may have shown that Coonen, as manager of the Dallas Region, was the owner of the property taken: (1) title, (2) possession, or (3) a greater right to possession than appellant. *McGee v. State*, 572 S.W.2d 723 (Tex.Cr.App.1978).

The record does not support the State's contention that the property was either owned or possessed by Coonen. To the contrary, the record clearly shows that Coonen exercised no control over the check at any time. Although the check was requested by the Dallas office, of which Coonen was in charge the issuance was approved by and the check was drafted by employees of the Atlanta office. In fact, Coonen testified that so far as disbursements of funds were concerned, he was in charge of those disbursed *from the Dallas* office. Since the funds in question were disbursed from the Atlanta office and sent directly to the appellant, Coonen had no occasion to see the check, much less gain title to or exercise

any care, custody, control or management over it. Moreover, to the extent that the check was issued in appellant's name and signed by two employees who neither received nor required Coonen's approval to do so, it cannot be said that Coonen had a greater right to possession than appellant.

We therefore conclude that the evidence was insufficient to convict appellant of the offense alleged in the indictment, or, more particularly, to show that Coonen was the "owner of the property as alleged in the indictment." See, *McGee v. State, supra; Commons v. State, supra.* We further conclude that no further prosecution may be had in this cause pursuant to the holdings in *Burks v. United States,* 431 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). These cases dictate that once this court has found the evidence legally insufficient to sustain a conviction, a second trial is precluded by the Double Jeopardy Clause of the Constitution of the United States.[1]

The judgment of conviction is set aside and is reformed to show acquittal. The judgment is reversed and the cause remanded accordingly.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

■ On original submission, the panel reversed this case on the ground of insufficient evidence to sustain the allegation of ownership. The indictment charged that Charles Compton "did unlawfully, knowingly, and intentionally exercise control over property other than real property, . . . without the effective consent of *J. Howard Coonen,* the owner thereof. . . ." (Emphasis supplied)

The panel wrote that Coonen never had any contact with the funds disbursed to the appellant from the Atlanta office. According to the majority, the two Atlanta employees of International Harvester who

signed the check "were in control of and jointly responsible for funds paid out of that office." Further, the majority stated that these two employees neither received nor required Coonen's approval to issue the check, and that it cannot be said that Coonen had a greater right to possession than the appellant.

An examination of the record, however, shows otherwise. Kent Hartley and John Pratt, the two Atlanta employees, testified that they were responsible for disbursing funds from the Atlanta office. Hartley stated that the disbursing of funds required prior approval before the money could be sent from Atlanta. George Bushfield and Tommy Bailey, a salesman and the manager of the Used Truck Center, respectively, testified that once a purchase of a truck had been negotiated the payment check had to be requested from the Atlanta office. Coonen testified that he was in charge of all disbursements from the Dallas area and all money to be paid out of the Atlanta office had to be "called in" from the Dallas regional office.

Robert Ewart, the Used Truck Center accountant, testified about the exact procedure he went through to order the check. His testiimony, in part, was as follows:

> "A. All right. An invoice is given to me usually from the manager with instructions to purchase a truck for a certain amount of money. I write up a check request form and I get him to sign it. Usually if it is a quick transaction, they will request that I go down the street at our other branch and run a Twix to Atlanta requesting the money and checking the form that I made after I run the Twix. Of course, the check request form goes to our regional office and this is confirmed, confirming the Twix."

He also stated that the Twix, or TWX, goes from the regional office to Atlanta, as does the check request form.

---

1. Compare *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

Pratt and Hartley were required to have Coonen's, or his office's, prior approval before any check could be issued. From this evidence, Coonen's office did have some control of the funds to be disbursed.

Coonen also had authority to deal with the funds after the check was issued from the Atlanta office. The proper procedure required the Atlanta office to send the check to Coonen, who would then exchange the money for the title to the truck. In the instant case, the Atlanta accounting office erred when it sent the check directly to Compton.

In *Cross v. State*, 590 S.W.2d 510 (Tex.Cr. App.1979), the defendant was convicted of theft for stealing a commemorative watch. The alleged owner, a supervisor for Southwestern Bell, testified that her responsibilities included ordering watches for a benefit committee for Southwestern Bell. She stated that she used a standard form that was forwarded through channels to the committee. The watch would then be sent directly to her for presentment to the honored employee. The watch was stolen from Southwestern Bell's mail room before the supervisor had a chance to receive it. We held that it is the employment relationship that determines whether a given individual is an "owner" within the meaning of V.T. C.A., Penal Code, Section 1.07(a)(24). We held that because the supervisor had managerial authority over her department and because it was her responsibility to order and to award the watch, she was the "owner" according to Section 1.07(a)(24), supra. She was to have care, custody and control of the watch until it was awarded. It is clear from the opinion that the benefit committee could not have sent the watch without the supervisor's approval and order. Cf. *McGee v. State*, 572 S.W.2d 723 (Tex.Cr. App.1978); *Commons v. State*, 575 S.W.2d 578 (Tex.Cr.App.1979).

We must look to the employment relationship to determine who is the proper owner under Section 1.07(a)(24), supra. In any modern corporation, responsibility will probably extend to several different people at various levels within the organization.

In *Cross*, we looked to the employment relationship to determine the person responsible for initiating or for approving the transfer of property. It was the supervisor who approved the award and initiated the process. In the present case, it was Coonen who had to approve the request for funds prior to its transmittal to Atlanta. Hartley and Pratt, the Atlanta accountants, required someone's approval before they could issue check. Finally, the check was to be sent to Coonen's regional officer before it would be turned over to Compton, a procedure analogous to that used by Southwestern Bell in the *Cross* case.

## II.

There is yet another more compelling reason to hold Coonen as the proper "owner." Section 1.07(a)(24), supra, defines owner as:

> "... a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."

V.T.C.A., Penal Code, Section 1.07(a)(28), defines "possession" as "actual care, custody, control, or management."

■ Thus, it is clear that the three ways ownership may be alleged are that the named individual had (1) title to the property, (2) possession, or (3) a greater right to possession than the defendant. Though the evidence clearly shows the title owner to be International Harvester, Inc., we have long held that the better pleading practice is to allege "special" ownership in a natural person acting for the corporation. *Eaton v. State*, 533 S.W.2d 33 (Tex.Cr.App.1976); *Castillo v. State*, 467 S.W.2d 572 (Tex.Cr. App.1971); *Osborne v. State*, 93 Tex.Cr.R. 54, 245 S.W. 928 (1922). In *McGee v. State*, supra, this Court held that the "greater right to possession" theory applied only in cases where both the owner and the actor had a joint interest in the property.

The *McGee* interpretation is wrong. By adding the third theory of ownership to the penal code, i. e., greater right to possession, it is clear that the Legislature intended to

expand the class of individuals to be protected from theft. See and compare Articles 1414 and 1415, V.A.P.C. (1925). Though this third theory clearly applies to those persons with joint interest in property, see V.T.C.A., Penal Code, Section 31.10, and the Practice Commentary, it is equally applicable to allegations of corporate ownership. The writer of the practice commentary was apparently basing his opinion that the greater right to ownership applied where there was a claim of right by the alleged thief upon the proposed code, Section 31.01(6), Penal Code (Proposed), which would have provided:

"(6) 'Owner means a person other than the actor who has possession of property, or any interest other than a mortgage, deed of trust, or security interest in property, even if the possession or interest is unlawful."

The practice commentary to the Proposed Penal Code (Section 31.03, Proposed Penal Code, Practice Commentary) made it clear that by virtue of the broader definition of "owner", the theft responsibility of joint owners and others with part interest in the property was expanded. However, it was never adopted. We will follow the Penal Code as written by the Legislature.

Because of the necessity of corporations adopting sophisticated accounting procedures and cross–checking devices, it is unlikely that we will find any one individual in any given large corporation who can meet all the criteria of "possession"; i. e., care, custody, control, and management. V.T.C.A., Penal Code, Section 1.07(a)(28), as construed by the majority in McGee.

This increasing problem will not be solved by allowing allegations of corporate ownership in some high ranking management person. In Williams v. State, 101 Tex.Cr.R. 523, 276 S.W. 282 (1925), we held that the proof of management alone was insufficient to sustain the ownership allegations absent some showing that the named individual had care, custody, or control over the stolen property.

In Cross, the problem of the division of responsibility is apparent. The telephone company supervisor and the benefit committee had responsibility for the commemorative watch at some point in the ordering process. In the present case, we are faced with a like situation. Both Coonen and the Atlanta accounting office had responsibility for the money. Coonen cannot issue a check for a truck purchase nor can the Atlanta office issue a check without Coonen's prior approval.

The McGee case is overruled.

By grounds of error two, three and seven, appellant advances varying attacks upon the sufficiency of the evidence to sustain his conviction. The third ground of error complains of the prosecutor's reading to the jury the content of a written stipulation in which the parties agreed that "the endorsement 'National Trailer Sales Ray Compton' on State's Exhibit No. 5 [the check issued by the Atlanta office] was made by the defendant Charles Ray Compton."

Appellant asserts that the requisites of Article 1.15, V.A.C.C.P.,[1] govern the introduction of the stipulation and that, the written waiver of confrontation required by Article 1.15 not appearing in the record, the content of the stipulation is not competent evidence of the identity of the person who converted the monies alleged stolen.

In Berry v. State, 504 S.W.2d 501 (Tex. Cr.App.1974), this Court rejected a comparable contention, concluding that, by its own terms, Article 1.15, supra, specifically governs only cases tried before the trial court without a jury. As in Berry, supra, the instant conviction was obtained in a jury trial. The stipulation contained in the

1. Article 1.15, supra, provides in part:

"The evidence may be stipulated if the defendant in such case consents in writing, in open Court, to waive the appearance, confrontation, and cross–examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the Court. Such waiver and consent must be approved by the Court in writing, and be filed in the file of the papers of the cause."

record before us was signed by both counsel for the State and defense, as well as by appellant; as such, the content of the stipulation was appropriately offered by the jury's consideration. See *Buitron v. State*, 519 S.W.2d 467 (Tex.Cr.App.1975). The evidence is sufficient to show that appellant endorsed the check in issue, and negotiated the face value amount by passing. Cf. *Stell v. State*, 496 S.W.2d 623 (Tex.Cr.App.1973).

Appellant's third and seventh grounds of error assert a fatal variance between the allegation of $400,000 current money of the United States of America contained in the indictment, and the proof adduced at trial. This complaint is bottomed on the erroneous premise that appellant was shown only to have unlawfully exercised control over the *check* in issue, and not any "money" within the meaning of the law.

A similar contention was made by the appellant on motion for rehearing in *Hedge v. State*, 229 S.W. 862 (Tex.Cr.App.1921); this Court replied:

"If A. owes B. $7.50, and by mistake gives in settlement a check for $75, which B. accepts, places in his pocket, and presents at the bank, and, upon payment to him by the bank of the $75 called for by said check conceives the intent to appropriate the $67.50 excess, he would be guilty of theft by such excess."

229 S.W. 865.

◼ Here, the evidence shows that International Harvester was indebted to appellant in the amount of $11,650, and that, through mistake, a check was issued in the amount of $411,650, and forwarded to appellant, doing business as National Trailer Sales. Appellant renegotiated the check and International Harvester never recovered the $400,000 erroneously overpaid. As stated *ante*, it was only upon appellant's negotiation of the check that he exercised control over it and, thus, its proceeds. See *Watkins v. State*, 438 S.W.2d 819 (Tex.Cr.App.1969). There is no fatal variance between the allegations in the indictment and the proof adduced at trial.

The evidence is sufficient to support the conviction and grounds of error two, three and seven are overruled.

◼ By his fourth ground of error, appellant complains of the trial court's admission of State's Exhibit No. 5–the check–into evidence, because the necessary predicate for its admission was not made in compliance with Article 3737e, V.A.C.S., the Business Records Act. This ground of error is without merit.

◼ The Business Records Act specifies the conditions under which an out–of–court statement may become admissible as an *exception* to the general prohibition against hearsay evidence. Compare and see *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.1980). The rule which generally prohibits the introduction of hearsay evidence is:

"Evidence of a statement made out of court *when such evidence is offered for the purpose of proving the truth of such statement*, is inadmissible as hearsay. (Emphasis original)

1A Ray, *Texas Practice* (3rd ed. 1980).

◼ The check in issue contains no "statement" or "assertion," the truth of which the State sought to establish by its introduction into evidence. The check is the negotiable instrument through which appellant exercised control over the $400,000 alleged stolen in the indictment. It was offered as evidence of its existence as a negotiable instrument and not for the purpose of proving the truth of any writing reflected upon it. Thus, the check did not amount to hearsay.

Because neither the check nor its content constituted hearsay evidence, there was no burden upon the State to establish its admissibility as an exception to the rule prohibiting hearsay. See, e. g., *McClure v. State*, 575 S.W.2d 564 (Tex.Cr.App.1979).

◼ Appellant next complains of the admission of the content of the telephone conversation between Bushfield and a person who identified himself as "Ray Compton," who stated that he understood he had some of Bushfield's money, on Saturday, May 15, 1976. Appellant contends that the State failed to prove that the caller was in fact

appellant, and Bushfield's testimony was inadmissible hearsay.[2]

Assuming without deciding that this was error, we hold that it was not such as would require a reversal.

■ Finally, appellant alleges that an argument by the prosecutor constituted reversible error, because it was neither a reasonable deduction from the evidence, nor based upon evidence in the record.

The prosecutor asserted that it was important to appellant to get the check into the possession of Dallas Truck Sales (DTS), an innocent third party, so that International Harvester could not "tie up the funds" in view of an inability to prove that DTS had knowledge of the overpayment by International Harvester. In short, the assistant district attorney concluded: "You can't touch the money once it is in Dallas Truck Sales' account. How did it get there? By [appellant's] endorsement on the check. That is exercising control over that money."

Appellant's objection to this argument was overruled, the trial court stating that the argument was invited.

The record reflects that in his closing argument, defense counsel had asserted that the State had failed to establish any relationship between appellant and Dallas Truck Sales, and that it was the latter's account into which the check had been deposited—not into any account of appellant. Defense counsel argued that the State had proved neither what had happened to the proceeds, nor that appellant "got any of the money," and observed that neither Fulton nor Jackson of Dallas Truck Sales testified even though defense counsel had been told by a representative of the State that Jackson would be called.

It has been settled by this Court that the generally approved areas of jury argument within which arguments must fall to be proper are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Todd*, supra; *Dunbar v. State*, 551 S.W.2d 382 (Tex.Cr.App.1977); *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973). "Even when an argument exceeds the permissible bounds of the above areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused into the trial proceeding." *Todd*, supra, at 297.

The complained of argument of the prosecutor, when placed in context, constituted a reasonable deduction employed in response to defense counsel's arguments. *Howard v. State*, 505 S.W.2d 306 (Tex.Cr.App.1974); *Houston v. State*, 503 S.W.2d 540 (Tex.Cr.App.1974). No error is shown.

The State's motion for rehearing is granted; the judgment is now affirmed.

CLINTON, Judge, concurring in part and dissenting in part.

In its zeal to write new law the majority reaches far beyond the evidentiary issue raised by the first ground of error that is dispositive of it to thrash a recent panel opinion of the Court, to shake up part of the practice commentary and to extend to multinational corporations what it perceives as needed protection through something called "the greater right of possession theory." The majority has overreached itself.

*McGee v. State*, 572 S.W.2d 723 (Tex.Cr.App.1978) is "wrong,"[1] says the majority,

---

2. At the hearing on punishment, appellant testified:

"I called International Harvester on a Saturday morning. He was talking about Friday afternoon when I wasn't there. The first thing I done when I come in, I called International Harvester and I asked for Joe Bennett. He wasn't there and Mr. Bushfield answered the phone. He said he would talk to me and I told Mr. Bushfield that if I had his money, I

would give it back to him. I told him the truth."

1. At 572 S.W.2d 725 the *McGee* panel wrote: "While this phrase has found its way into several opinions which might have led to some confusion, it is clear that the 'greater right of possession' concept of ownership applies only in those cases where both the 'owner' and the 'actor' have some sort of joint interest in the

because it invited the reader to "see" the practice commentaries which, in turn, "had no basis in the statute as adopted." As the majority sees it, "The writer of the practice commentary was apparently basing his opinion that the greater right to ownership [sic] applied where there was a claim of right by the alleged thief upon the proposed code, Section 31.01(6)..." That proposed code, "Texas Penal Code, A Proposed Revision," (Final Draft, October 1970), West Publishing Co., provides the context and cornerstone of the analysis that follows.[2] From that is structured the meaning of "owner" to apply in theft cases.

Let it be noted at the outset that the proposed code did not define "owner" in the general provision Section 1.07. Rather, each chapter that embraced a bundle of related offenses in which ownership was an ingredient carried its own definition of "owner,"[3] albeit more often than not the definitions were the same or similar.

For purposes of the theft offense:

"(6) 'Owner' means a person other than the actor who has possession of property, or any interest other than a mortgage, deed of trust, or security interest in property, even if the possession or interest is unlawful."

The Committee Comment in pertinent part explained:

"Section 31.01 defines 'owner' broadly so that the new theft offense protects a deprivation of another's 'interest' in the property, whether or not that interest is possessory. This changes present law, which, except for offenses involving conversion, is directed primarily toward interference with rights of possession, Penal Code arts. 1410, 1415. * * *

"Penal Code arts. 1416 and 1417 now restrict theft by an owner or part owner

property. See Practice Commentaries to §§ 31.03 and 31.10, V.T.C.A., Penal Code. See also 2 Branch's 3rd ed. 401."

**2.** Contemporaneously called "The Bluebook," each proposed section was accompanied by a "Committee Comment" which comments, it is explained in the foreword to the enacted penal code, are "an important source of legislative history," 1 V.T.C.A., Penal Code xxiv. Of

of his own property to instances where another had a right of possession at the time of the acquisition. The new theft offense, by requiring deprivation from the 'owner,' and defining owner broadly, will expand the theft responsibility of joint owners and others with part interests in property, see Section 31.09 (actor's interest in property) and comment.

"The definition of owner excludes, however, those who have a security interest in property in possession of the debtor, even if legal title is in the secured creditor pursuant to a conditional sales contract or other security agreement.... [T]he behavior of debtors and vendees of secured property is not readily amenable to control by theft. Their conduct with respect to secured property and the concomitant protection of secured creditors is accordingly governed by the fraud chapter, e. g., Section 32.33 (hindering secured creditors)."

Nothing could be plainer from this explication of the definition of "owner" for theft purposes: the proposal was deliberately broader than subsisting law, designed to protect a wider "interest" in property and intended to expand theft responsibility of joint owners, but excluded security interest from the concept of ownership. However, the proposed definition, with all its intendments, was not enacted. Still the majority somehow draws comfort from that historical non–event.

What the Legislature ultimately did was to remove every definition of "owner" from its related chapter in favor of a single, all–purpose meaning for illuminating ownership when it is a constituent ingredient of a particular offense. Thus, Section 1.07(a)(24):

course, as also pointed out, if a proposed section was altered in the legislative process the original comment was modified before published as a practice commentary. *Ibid.*

**3.** E.g., arson, Section 28.01(2); burglary, Section 30.01(2); theft, Section 31.01(6); fraud, Section 32.01(2).

" 'Owner' means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."

The majority correctly opines, "it is clear that the Legislature intended to expand the class of individuals to be protected from theft," but errs in seeing "greater right of possession" as the expansion.

In rejecting the proposed broad definition of "owner," the Legislature retreated, ironically enough, to principles of "ownership" that had been tried and found true. Thus, title was an indicia of ownership, *Osborne v. State*, 93 Tex.Cr.R. 54, 245 S.W. 928, 929 [4] (1923); possession alone could base theft, Articles 1414 and 1415, P.C. 1925,[5] Committee Comment, *ante*; and a doctrine of greater right of possession was prevalent, Articles 1416 and 1417, P.C. 1925.[6] Therefore, the real novelty in the enacted definition of "owner" is its introduction of "title" as a particular form of ownership subject to being stolen.

Accordingly, the authors of the former committee comment, see page 2 *ante*, appropriately modified the first paragraph and, as modified, brought it forward in the same position in the Practice Commentary following § 31.03:

"Section 1.07(24) defines 'owner' so that the new theft offense protects a deprivation of another's *title* [7] in the property, whether or not the owner possesses the property. This changes prior law, which, except for offenses involving conversion, was directed primarily toward interference with rights to possession, Penal Code arts. 1410, 1415. * * *"

The next paragraph of the Practice Commentary is characterized by the majority as having "no basis in the statute as adopted." Yet, as with the first paragraph, the authors of the erstwhile committee comments again took note of the altered definition. First, they modified "broadly" with "more" so that the phrase now read "defining owner more broadly." Then they referred the reader to a related commentary following § 31.10, entitled "Actor's Interest in Property." [8] There the commentators become crit-

---

**4.** "A corporation may, in its corporate name, hold title (ownership) to personal property which is the subject of theft. It is equally true that the 'actual care, control and management' (the possession) thereof must of necessity be in some natural person, someone acting for the corporation."

**5.** Article 1414 provided, "To constitute theft it is not necessary that the possession and ownership of the property be in the same person at the time of taking." Article 1415 provided, "Possession of the person so unlawfully deprived of property is constituted by the exercise of actual control, care and management of the property, whether the same be lawful or not." "Custody" and "possession" were not convertible terms, *Boatwright v. State*, 121 Tex.Cr.R. 578, 51 S.W.2d 311, 313 (1932).

**6.** From the Old Code through Article 1417, the statute provided:

"If the person accused of the theft be part owner of the property, the taking does not come within the definition of theft, unless the person from whom it is taken be wholly entitled to the possession at the time."

As early as *Fairy v. State*, 18 Tex.App. 314 (1885) the court wrote in terms of one's right of possession of personal property being "as good, if not better right" than another's, *id.* at 320. Other examples are collected in *Hudiburg*

*Chevrolet, Inc. v. Globe Indemnity Co.*, 394 S.W.2d 792, 794 (Tex.1965). See also the interesting case of stolen sheep in *Wall v. State*, 110 S.W.2d 68 (Tex.Cr.App.1937), the accomplice having "no right to take possession of any of the sheep in question, notwithstanding he was part owner of same."

**7.** Compare with the former committee comment that the proposal defines owner "broadly" to protect deprivation of "another's '*interest*' in the property." (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**8.** Obviously the stated reference to "Section 31.09" is an inadvertence, it being the parallel provision in "The Bluebook." Section 31.09 proposed:

"It is no defense to prosecution under this chapter that the actor has an interest in the property or service stolen if another person also has an *interest* that the actor is not entitled to infringe."

As enacted, Section 31.10 provides:

"It is no defense to prosecution under this chapter that the actor has an interest in the property or service stolen if another person has *the right of exclusive possession of the property*."

The approved language appears to be a transformation of former Article 1417, quoted in

ical of the reduction in protection by the changed concept, *viz:*

> "... thus [under the old code] some conduct by a joint owner could escape criminal sanction even though he deprived other owners of valuable interest, e. g., *Hall v. State*, 279 S.W. 464 (Tex.Cr.App.1926) (partner in possession cannot commit theft). This section, in its original form, would have removed any doubt about the penal responsibility of partners, tenants–in–common, and owners of joint bank accounts, for example."

Further, they lamented:

> "The proposal also defined 'owner' more broadly for theft purposes. Originally, 'owner' would have included anyone with possession of any 'interest' (other than a nonpossessor security interest) in property. As enacted, an 'owner' is anyone who has 'title, . . . possession, . . . or a greater right of possession . . . than the actor.' See Section 1.07(24). Thus some joint interest that would have been protected under the proposal are excluded, *but the definition of 'owner' that was adopted, when read with the theft offense, indicates that protection extends to some joint interests that do not have an exclusive right to possession.*"

Is not this, simply stated another way, our old friend *Fairy v. State,* supra, modestly clothed in modern attire?

In sum, the commentators, having knowledge of what was originally proposed, took cognizance of what was actually adopted and criticized abandoning the balance.[9] In all of this their perceptions are never blurred; their commentaries do not, as the majority charges, lead one astray. The understanding of *McGee* is right. Greater right of possession lies in competing rights.

Finally, the majority pretends that another authoritative source of legislative history

and statutory interpretation, cited by *McGee*, does not exist. In 2 Branch's Texas Annotated Penal Statutes, 3rd Edition, § 31.03 it is written–according to the preface to the work,[10] with "the participation of the Texas District and County Attorneys Association . . ." :

> "OWNER:
>
> Section 1.07(a)(24), defines 'owner' broadly . . . By having defined 'owner' to include 'a person who has title to the property' and not requiring that he have possession of the property, this may well be a departure from present law. *OTHERWISE, IT APPEARS NOT TO CHANGE THE CONCEPT OF OWNER IN ANY OTHER RESPECT.*"

When seasoned commentators and interested prosecutors, who had a hand in writing it, concur in their respective interpretations of statutory language that in historical prospective is already facially clear, to presume their views are based on a proposed provision that failed of enactment is something other than reasoned adjudication.

Furthermore, like a loose cannon on deck, the majority has fired off a round of "apparency"–"The writer . . . was apparently basing his opinion that the greater right . . . applied where there was a claim of right by the alleged thief . . ." Of course, the commentary says no such thing. The discussion throughout is not about "a *claim* of right" but concerning "a greater *right* of possession." Indeed, the proposed code also contained § 31.10, entitled "Claim of Right," and the same commentator, speaking for the committee, correctly commented on the matter:

> "The object of the theft offense is to deter those who would acquire something of value knowing that they have no right to it . . . . This position is reflected in Texas case law, which has established

---

note 6 *ante, into the format of the new code. Its clear implication is that the principle of Fairy v. State,* supra, not only remains viable but also has been extended to the situation where "another person," as well as "the person from whom it is taken," Article 1417, supra, does *not* have "the right of exclusive possession of the property."

**9.** In the commentary following § 28.02 regret is similarly expressed concerning deletion of definition of "owner" as it related to the offense of arson.

**10.** 1 Branch's 3rd Ed. vi.

that a genuine belief in one's legal right to acquire something of value or an honest intent to pay for it is a defense to prosecution for theft... [citing cases].[11]

Section 31.10 restates this existing case law. * * * " Section 31.10 did not make it through the legislative process. It is absurd to suggest one who researched the cases and wrote so incisively on the claim of right matter would become confused when he later discussed the separate issue of greater right of possession.

In short, the majority position will not withstand critical examination. It does not claim support in the authorities, for there is none. Unveiled, the majority opinion is but a statement of what is conceived to be a desirable public policy "to take cognizance to the increasing division of responsibility found in most major corporations." That suggestion is better made to the Legislative Department and, as shall now be demonstrated, the Court needlessly concerns itself with this "increasing problem."

After original submission a panel of the Court concluded that the first ground of error challenging sufficiency of the evidence in one particular should be sustained and, accordingly, reformed the judgment to show an acquittal. We granted motion for leave to file a motion for rehearing filed by the State on the assumption that the evidence failed to show that the person named in the indictment was the owner of the stolen property in the sense of having title or possession of it at the time it was stolen. Upon further examination of the record, however, the Court has determined that the assumption in the second sense was incorrect and, upon the factual analysis made, the State's motion should be granted.[12]

Accordingly, I dissent to Part II of the majority opinion but concur in the judgment of the Court.

ODOM, J., joins.

ONION, Presiding Judge, dissenting.

Much of what Judge Clinton says is true, but I believe the cause was properly disposed of on original submission.

---

11. A multitude is also gathered in 5 Branch's Annotated Penal Code, 2nd Edition, § 2655, p. 105ff.

12. Thus, without Part II of the majority opinion, I would not delve into the "greater right to possession" language of V.T.C.A. Penal Code, § 1.07(a)(24), to determine whether the panel finding of *McGee v. State*, 572 S.W.2d 723, 725 (Tex.Cr.App.1978) is correct or to assay certain sections of the practice commentary to the penal code for accuracy. I am persuaded that a closer look at the relevant factual aspects of

the case in light of established authority leads to the sound conclusion that J. Howard Coonen, the person alleged to be the owner of the stolen personal property, was shown to be just that by reason of his having possession of it. The decisional guide to follow is *Eaton v. State*, 533 S.W.2d 33 (Tex.Cr.App.1976), a unanimous decision by the Court. Having similarly come to that conclusion the majority has no mandate to "reach out" and gratuitously construe § 1.07(a)(24) and overrule *McGee v. State*.